COMPTON *v.* STATE OF INDIANA.

[No. 30,709. Filed April 1, 1968.]

*Francis E. Tucher,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Raymond I. Klagiss,* Deputy Attorney General, for appellee.

JACKSON, J.—This is an appeal from the Marion Criminal Court, Division 2, following conviction by a jury, of the defendant on a charge of Involuntary Manslaughter presented by indictment.

The indictment, omitting formal parts, reads as follows, to-wit:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that HERSCHELL COMPTON on or about the 9th day of May, A.D. 1964, at and in the County of Marion and in the State of Indiana, did then and there unlawfully and feloniously kill one JOHN

HALL, a human being, involuntarily and without malice in the commission of an unlawful act, to-wit: he did then and there unlawfully and feloniously in a rude and insolent manner touch, beat and strike the said JOHN HALL with the fists of the said HERSCHELL COMPTON and he, the said HERSCHELL COMPTON, did then and there and thereby unlawfully and feloniously inflict mortal wounds and injuries upon the body of the said JOHN HALL from which mortal wounds and injuries the said JOHN HALL then and there and thereby died; and the said wounds and injuries and death of the said JOHN HALL were proximately caused by and were the direct result of the aforesaid unlawful act in touching, beating and striking the said JOHN HALL in an unlawful, rude and insolent manner as aforesaid, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

On August 7, 1964, appellant in person and by counsel appeared, waived arraignment and pleaded not guilty to the indictment.

Thereafter, on October 13, 1964, this cause came on for trial by jury. The jury returned its verdict as follows:

"We, the Jury, find the defendant, HERSCHELL COMP-TON, guilty of manslaughter as charged in the indictment and that he is unknown years of age."

The defendant-appellant polled the jury. The court ordered a pre-commitment investigation report. Sentencing was set for October 23, 1964, at 1:45 p.m.

On October 22, 1964, the Probation Department filed the Pre-commitment Investigation Report.

Thereafter, on October 23, 1964, the following sentence was imposed on appellant, to-wit:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the defendant be and hereby is, sentenced to Indiana State Prison for not less than Two (2) nor more than Twenty-one (21) years."

On the same day defendant filed his Motion for New Trial. Such motion in pertinent part reads as follows, to-wit:

"1. That the verdict of the jury is not sustained by sufficient evidence.

2. That the verdict of the jury is contrary to law.

3. Error of law occurring at the trial in this: That the Court erred in overruling of defendant's motion for discharge made at the end of all the evidence based on the failure of the State to prove the defendant's guilt of any crime beyond a reasonable doubt."

Thereafter appellant requested appointment of pauper counsel and transcript to appeal his conviction. Request was granted, and Francis E. Tucher was appointed pauper counsel to represent appellant.

Appellant's Assignment of Errors is the single specification:

"1. That the Court below erred in its overruling of the appellant's Motion for a New Trial."

A summary of the evidence most favorable to the appellee, State of Indiana, is as follows:

On the morning of May 9, 1964, State's witness Mary Oliver saw the appellant and John Hall, the decedent, on the steps of the Sportsman's Bar on Indiana Avenue and Douglas Street in the City of Indianapolis, Marion County, Indiana. She heard the appellant make a remark to the decedent, and then appellant struck him. She did not see John Hall push, swing at, or strike Herschell Compton at any time. John Hall fell clear of three steps and out on the sidewalk. When Hall fell she went to him and had hold of his arm telling him to get up because she did not think he was hurt. She further testified that she had been drinking and that her drinking could have had some effect on her memory and that she was excited when the man was found to be dead. While Hall was lying on the sidewalk a couple of men came by and helped her put him in his car. The appellant struck but one blow. She did not think it was hard or that John Hall was hurt. She saw no weapon, and she could not see anything but the appellant's fist when he hit Hall. The deceased and the appellant had been brothers-in-law.

Howard Kramer, a police officer of the City of Indianapolis, testified that he was called by radio to the vicinity of Douglas and Indiana Avenue on May 9, 1964. On arrival he saw a lady who said a man needed help. He found the body of a man, apparently dead, lying in the front seat of an automobile. A Deputy Coroner arrived. The witness identified State's Exhibit No. 2 as a photograph of John Hall and identified State's Exhibit No. 4 as a photograph of John Hall taken in the morgue at General Hospital. On cross-examination the witness testified that when he arrived at the scene there was a piece of brown wrapping paper under the victim's head. He saw blood stains on the back of the skull. During the course of the investigation he talked to Mary Oliver and numerous other people. The appellant was arrested May 31, 1964, at 9:10 p.m. at 2526 Indianapolis Avenue. The police had been looking for him since the 9th or 10th of May. The witness talked to the appellant the night he was arrested. The appellant neither admitted nor denied the crime.

The State's next witness was Marvin Dziabis, a physician engaged in the practice of medicine and a deputy coroner. He had performed approximately 400 to 500 autopsies. The witness identified State's Exhibit 2 as a photograph taken at the scene he was asked to investigate. He identified State's Exhibit 3 as the same picture from another angle taken on Indiana Avenue. He examined the body at the scene. He pronounced John Hall dead at the scene. The witness identified State's Exhibit 4 as a picture of the same person taken in the morgue at General Hospital. Dr. Dziabis testified the body was removed from the scene and taken to the morgue at General Hospital. He performed the autopsy. The injuries sustained by the dead man were received less than four hours prior to the autopsy. Based on the autopsy and other examinations made by the witness he had an opinion as to the cause of death. It was "Compression of vital centers of medulla secondary to unstable atlanto-occipital joint produced by trauma." It was the actual fall which caused the death. Death could

have resulted if the body had been dropped while being carried to the car.

The State's witness, Mary Oliver, was recalled. She testified that John Hall had been carried to the car, that he had not been dropped and that his head had not bumped the car.

On behalf of the appellant, his sister, Winona Phillips, testified she knew Mary Oliver, that Mary Oliver was a heavy drinker and that the witness had seen her drunk many times. That she did not see her on May 9, 1964.

Robert Jackson, a police officer of the City of Indianapolis, testifying for the defense, testified that he saw and talked to Mary Oliver at the scene. He knew the appellant. Mary Oliver identified Compton as the assailant. In his opinion Mary Oliver was under the influence of alcohol in the early morning hours of May 9, 1964.

Marvis Compton testified for the defense that she was and had been the common law wife of the appellant for twelve years. She testified that she was acquainted with Mary Oliver and that she had seen her since May 9, 1964. About two weeks after May 9, 1964, she had a conversation with Mary Oliver about the happenings of that date, and Mary Oliver said that it all happened too fast, she did not know exactly what had happened. Mary Oliver did not tell her that the appellant had struck or injured John Hall. She asked Mary who did it, and all Mary could say was some tall man. Mary Oliver used alcoholic beverages and got drunk.

The appellant testified in his own defense that John Hall was his brother-in-law. They had never had an argument. He was the only one John Hall would let drive his car. When he got off work at 12:00 o'clock on May 9, 1964, he came to the Sportsman's Bar and saw John Hall standing at the end of the bar and asked him if he wanted a beer. John said "yes". They sat down and drank a beer and then John Hall said he was going to get Mary Oliver so he could go home. She was in his car asleep. The last time he saw John

Hall he was holding the car door open for Mary Oliver to get in. Mary Oliver had threatened to get even with appellant because he would not alibi for her son sometime prior to May 9, 1964. He denied telling a police officer he pushed or slapped John Hall. On cross-examination it was brought out that appellant had a previous record. He again denied ever having struck or pushed John Hall.

The only error assigned on appeal is the overruling of appellant's Motion for a New Trial. The argument made is that the evidence is not sufficient to sustain the conviction of the appellant. As stated in his own words in his brief, appellant's contention is:

"The evidence in this case most favorable to appellee, together with all favorable inferences to be drawn does not as a matter of law prove the defendant was guilty of the crime of Involuntary Manslaughter. To constitute the crime of Manslaughter the unlawful act must be of such a character that death is the natural result and probable consequences of its commission."

We are inclined to agree with the appellant that the evidence is meager and the proof is thin. If this matter was before us de novo, rather than on appeal, the result might not be the same. As was pointed out by appellant's verbal motion for a directed verdict at the close of the State's evidence their best witness, their only witness to the striking, was to say the least, shaky, and by the evidence of one of the investigating police officers was under the influence of alcohol at the time of the investigation.

The record in this case discloses that such witness did testify that the appellant struck the deceased once with his fist knocking him off the steps of the Sportsman's Bar to the sidewalk. The coroner testified that in his opinion death resulted from the decedent's head striking the sidewalk. There is in the record no evidence of any conversation or acts on the part of the decedent that would give rise to a defense to the action on the theory of self defense. Indeed the appellant

denies any trouble of any kind with the decedent. According to his testimony he left the decedent standing by his car holding the door open for State's witness Mary Oliver to enter his car.

We have, over the years, consistently held that the jury is the judge of the law and the evidence. It is the function of the jury to determine the weight of the evidence and the credibility of the witnesses. On appeal we will not weigh the evidence.

The indictment in the case at bar is founded on Acts 1941, ch. 148, § 2, p. 447, being § 10-3405 Burns', which provides:

> "Whoever voluntarily kills any human being without malice, expressed or implied, in a sudden heat, or involuntarily in the commission of some unlawful act, is guilty of manslaughter, and on conviction shall be imprisoned not less than two (2) years nor more than twenty-one (21) years."

This Court has held that in order to commit involuntary manslaughter, it is only necessary that the killing be done in the commission of an unlawful act. *Minton* v. *State* (1964), 244 Ind. 636, 195 N. E. 2d 355.

This Court has also specifically held that where one unlawfully strikes another, thus committing an unlawful assault and battery, from which death ensues, one is guilty of involuntary manslaughter. *State* v. *Johnson* (1885), 102 Ind. 247, 1 N. E. 377.

The Court has held that it will not disturb a verdict as not being supported by sufficient evidence unless there is a total absence of substantial evidence on an essential element of an alleged crime or where the evidence is without conflict and leads to but one reasonable conclusion and the verdict of the jury reached a contrary conclusion. *Wojcik* v. *State* (1965), 246 Ind. 257, 204 N. E. 2d 866; *Tait* v. *State* (1963), 244 Ind. 35, 188 N. E. 2d 537; *Weaver* v. *State* (1963), 243 Ind. 560, 187 N. E. 2d 485.

The judgment of the trial court is affirmed.

Lewis, C. J. and Arterburn, Hunter and Mote, JJ. concur.

NOTE.—Reported in 235 N. E. 2d 181.