## NAPIER *v.* STATE OF INDIANA.

[No. 269S34. Filed February 4, 1971. Rehearing denied March 15, 1971.]

*Melvin A. Richards, Jr., Castor & Richards,* of Noblesville, for appellant.

*Theodore L. Sendak,* Attorney General, *Kenneth M. Mc-Dermott,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was originally charged by an indictment in two counts, Count 1 charging involuntary manslaughter and Count 2 charging reckless homicide. Upon the conclusion of the State's evidence the State moved for and

obtained a dismissal of the charge of reckless homicide. At the conclusion of the trial the jury returned a verdict finding appellant guilty of involuntary manslaughter. Upon this verdict appellant was sentenced to the Indiana State Prison for a period of two to twenty-one years.

The record in this case discloses the following facts:

On June 5, 1966, the appellant and decedent, Henry Stidham, were riding in appellant's automobile traveling in a northerly direction on Indiana State Highway 37A. At a point north of 116th Street in Hamilton County appellant's automobile was in the process of overtaking traffic traveling in the same direction. In passing these vehicles it was necessary for appellant's automobile to be driven in the westerly lane of the two lane highway, in other words the lane for oncoming traffic. As appellant's car traveled in this position on the highway an automobile driven by Donald H. Schuette appeared over a rise of the highway. Mr. Schuette testified that as he drove south he was meeting a line of north bound traffic and the south bound lane was clear, that upon coming over the rise he was confronted with the presence of appellant's automobile. Whereupon, he immediately turned to his right onto the west berm of the highway. Appellant attempted evasive action to his left which also carried him onto the west berm of the highway. At this point the two vehicles collided, the front portion of Mr. Schuette's vehicle striking appellant's vehicle in the vicinity of the right front door. The resulting crash caused the death of the decedent, Henry Stidham. Mr. Stidham died of extensive injuries to the right side of his body.

At the time appellant's vehicle left the highway it was traveling beside and in the same direction as a vehicle operated by one Phillip Bruner, who testified that upon seeing oncoming traffic and the car beside him he pulled to the right to the eastern berm of the road where he was immediately struck from the rear by a vehicle traveling in the same direction. The distance from 116th Street to the point of impact was 1,581 feet. Beginning at a point some forty feet north of the 116th Street intersection and extending to several hundred

feet north of the point of impact the highway was marked by a yellow line indicating that it was a no passing zone for north bound traffic. The reason for the no passing zone was the existence of a slight rise in the highway north of the point of impact which obstructed vision of traffic approaching from the north.

A Mrs. Fish testified as a witness for the State that she arrived at the scene as the accident occurred. Immediately after the impact she saw two occupants in defendant's automobile; that the occupant on the right or passenger side of the vehicle was slumped over. A person whom she identified as the appellant was seated on the driver's side. The appellant got out of the vehicle, then reached across the front seat and pulled the passenger from the right side of the front seat to a position on the left side behind the steering wheel.

Appellant first claims the verdict of the jury was not sustained by sufficient evidence in that the State did not prove he committed an unlawful act as alleged in the indictment. The indictment alleged the defendant unlawfully attempted to pass several cars traveling in the same direction and failed to yield the right of way to an oncoming car driven by Donald H. Schuette, thereby causing the fatal accident.

It is appellant's contention that the State only proved the appellant was attempting to pass one car at the time of the accident. Therefore, there is a fatal variance in that the state failed to prove he was attempting to pass several cars as alleged. The jury could infer from the facts above recited that the appellant was attempting to pass at least two cars, one driven by Mr. Bruner and the one which was immediately behind Mr. Bruner which struck the Bruner car at almost the same time appellant's vehicle was struck by the Schuette car. The gravamen of the offense charged was the killing of another person while engaged in an unlawful act, which in this case was the unlawful passing. It would seem immaterial as to how many vehicles the appellant was passing at the time of the accident. The fact that he was pass-

ing any vehicle in an unlawful manner is sufficient to establish proof of the fact charged.

The test of a fatal or material variance is whether the defendant was misled or surprised and thereby harmed in the preparation of his defense. *Madison* v. *State* (1955), 234 Ind. 517, 130 N. E. 2d 35. The appellant here alleges no surprise nor does he point out how he was harmed in the defense of his case by any variance, if there was one, as to the number of cars he was passing at the time of the accident. We see no material variance between the facts proved and the facts alleged.

The defendant also contends there is insufficient evidence to prove that he failed to yield the right of way to an oncoming car. He bases the contention upon the fact that the collision with the Schuette car occurred on the west berm of the road thus proving that he did yield the right of way to the Scheutte car, but that Mr. Schuette's action in driving off onto the berm in fact caused the collision. We cannot accept appellant's interpretation in this regard. Mr. Schuette was proceeding south on the highway in a lawful manner driving in the correct lane. As he came over a small rise in the highway he was suddenly confronted with appellant's vehicle meeting him head on in his lane of traffic. Faced with that circumstance it was entirely reasonable for Mr. Schuette to use any means at his disposal to attempt to avoid a collision. Although it was quite natural for the appellant to also attempt to avoid the collision by driving onto the berm of the road, it was the appellant, not Mr. Schuette, who had created the unexpected situation which placed two rapidly moving vehicles on a collision course in the highway. The jury was fully justified in finding from these facts that the appellant was guilty of failure to yield the right of way to an oncoming vehicle.

Appellant also alleges there is insufficient evidence to establish beyond a reasonable doubt that he acted with a wilful,

wanton, reckless disregard for the rights of others. A person may be found guilty of manslaughter if they involuntarily, but in the commission of some unlawful act, caused the death of another person. Burns Ind. Stat., (1956 Repl.), § 10-3405. In the case at bar the count of the indictment under which the appellant was convicted charged that appellant caused the death of Henry Stidham while in the commission of the unlawful act of attempting to pass a moving vehicle in such a manner as to fail to yield the right of way to oncoming traffic.

It is true this Court has repeatedly stated that mere negligence is not enough to sustain a conviction for involuntary manslaughter. *Minardo* v. *State* (1932), 204 Ind. 422, 183 N. E. 548. In the case at bar the question before the Court is whether or not the appellant was deliberately violating a traffic law of the State of Indiana or whether his presence on the "wrong side of the road" was the result of mere negligence on his part. This Court held in the case of *Seibert* v. *State* (1959), 239 Ind. 283, 156 N. E. 2d 878, that the mere fact a driver was passing another vehicle on a two lane road as he approached the crest of a hill did not in and of itself establish a deliberate violation of the statute. It was pointed out in the *Seibert* case that the hill in question was "a fooler" and that the appearance of the highway at that point could lead a driver to believe that he was in fact seeing the entire road ahead when as a matter of fact an oncoming car might be concealed in a depression in the road, which was not evident. The Court further pointed out that there was no sign or any yellow line warning persons of the obstructed view ahead. However, in the case at bar the facts above recited were sufficient for the jury to find that the appellant had consciously chosen to cross a yellow line to pass other vehicles; that his voluntary act exceeded mere negligence and the fact that his deliberate, unlawful act resulted in the death of another person constituted manslaughter.

Appellant next claims the State did not establish beyond a

reasonable doubt that he was the driver of the automobile. It is true that the appellant himself testified that the decedent was the driver. However, as above pointed out Mrs. Fish testified that the appellant was the driver, and she further specifically stated that the presence of the decedent behind the wheel was accomplished by the deliberate act of the appellant in placing him there following the accident. We have repeatedly stated we will not weigh conflicting evidence on appeal. *Broderick* v. *State* (1967), 249 Ind. 476, 231 N. E. 2d 526, 12 Ind. Dec. 168. There is ample evidence from which the jury could conclude that appellant was in fact the driver of the car.

Appellant also contends the verdict of the jury was contrary to law because it was not sustained by sufficient evidence. We hold that the verdict was sustained by sufficient evidence and was, therefore, not contrary to law because of lack of evidence.

Appellant next claims error in that irregularities and abuse of discretion on the part of the trial judge prevented his having a fair trial. Under this assignment he first claims the court abused his discretion in overruling a motion for a continuance prior to the beginning of the trial. Appellant based his request for continuance on the fact that the State had submitted a partial list of its witnesses some two weeks before the trial, then six days before the trial the State submitted an additional list. Appellant's counsel complains that he could not be adequately prepared and that his request for continuance should have been granted. However, he does not state how he was harmed or in what way he was surprised, if he was, by the testimony of any particular witness. We have previously stated if a continuance is based upon other than statutory grounds the motion is directed to the court's discretion. *Calvert* v. *State* (1968), 251 Ind. 119, 239 N. E. 2d 697, 15 Ind. Dec. 227. Where there is no showing of harm this Court must conclude that the trial court did not abuse his sound discretion and that the denial of the motion for continuance was not reversible error. *Jay* v. *State* (1965),

246 Ind. 534, 206 N. E. 2d 128, 5 Ind. Dec. 231. We hold that the trial court did not commit error in refusing to grant the continuance requested by appellant.

Appellant next contends the trial court commited error in repeatedly sustaining objections to defense counsel's questions addressed to witnesses and criticized counsel for his method of questioning. It is true the trial court from time to time in the course of the trial admonished counsel for the appellant as to his method of questioning. However, the court also admonished the jury that they were to disregard the remarks of the court. The very nature of a trial requires a judge to rule upon objections made by counsel. Each time such a ruling is made a claim might be made by the attorney against whom the court had ruled that he was being placed in a bad light before the jury. We can only say that an examination of this record fails to disclose any showing of bias or prejudice of the trial court, and that he was merely properly exercising his discretion as to whether or not he would allow certain types of leading questions. *Shipman* v. *State* (1962), 243 Ind. 245, 183 N. E. 2d 823, certiorari denied 371 U. S. 958, 83 S. Ct. 515, 9 L. Ed. 2d 504.

Appellant next claims the trial court erred in refusing to declare a mistrial because of the publishing of a newspaper article which appeared on the evening of the day in which the trial commenced. The objectionable part of the article stated that three of the State's witnesses would remain unidentified until the trial because they feared the consequences of testifying and that each of the three had had a conversation with the defendant wherein the defendant stated he was the driver of the car in which Stidham was killed. An examination of the court room procedure had at the time the article was published in THE NOBLESVILLE LEDGER discloses that the trial judge did everything reasonably within his power to remind the jury of his preliminary instruction that they should disregard any thing heard on the radio or television or anything read in the newspapers concerning the case, and that they

should make their decision based solely upon the evidence received in court. Although several of the jurors admitted reading the article they all stated that they could disregard the article and base their decision solely upon the evidence. This in and of itself might not be sufficient in some instances, but in the case at bar the objectionable part of the article was that three witnesses would testify at the appellant's trial to the effect that the appellant had told them that he was driving the automobile. Although witnesses did appear and testify against the appellant following the publishing of the article, no witnesses testified as to any such statement by the appellant. The jurors were expressly told by the judge that the statement contained in the article was absolutely false.

This case does not present the question of facts being disclosed through the news media to jurymen, which facts were inadmissible in evidence and as such had been excluded or were destined to be excluded at the trial. We concede that a disclosure by a newspaper of such information would be extremely difficult to cure. However, to reverse a case such as the one at bar because a newspaper stated witnesses would tesify in a certain manner when they in fact did not so testify by holding that the trial judge was powerless to correct such misinformation in the minds of the jurors is to place the court in an unreasonable position as to his ability to protect court room proceedings against irresponsible actions of third parties.

We hold that the case at bar does not come within the purview of *Marshall* v. *U. S.* (1959), 360 U. S. 310, 3 L. Ed. 2d 1250, 79 S. Ct. 1171. In the *Marshall* case evidence which had been excluded by the trial court as being inadmissible was published in the newspaper and read by the jurors. In the case at bar the evidence which the newspaper claimed to be forthcoming was never submitted by the State. There was no claim in the newspaper article that it was evidence which the trial court had excluded. It was merely a promise of things to come which did not materialize. The appellant does not

show this Court nor do we find from the record how this situation could have prejudiced the appellant. In the absence of a showing of prejudice the trial court will be affirmed. *Harris* v. *State* (1967), 249 Ind. 681, 231 N. E. 2d 800, 12 Ind. Dec. 279.

Appellant claims the trial court erred in permitting witnesses to testify that at the time of his death the decedent himself did not have a valid driver's license. Appellant claims this fact was totally immaterial to the crime charged and its admission in evidence was highly prejudicial to his defense. With this we cannot agree. Part of the appellant's defense in this case was that Henry Stidham was the driver of the automobile. Whether Henry Stidham was or was not a licensed driver at the time would be a matter which might have a bearing upon the fact presented for the jury's consideration as to whether or not he was the driver of the car. The evidence, slight though it might be, was pertinent to the issue and therefore admissible. It was within the province of the jury to hold what weight, if any, it would give to such evidence. *Compton* v. *State* (1968), 250 Ind. 103, 235 N. E. 2d 181, 13 Ind. Dec. 547.

Appellant also claims the trial court erred in permitting witnesses to answer questions calling for conclusions. Although such questions are objectionable, it does not necessarily follow that it is reversible error to permit the witness to answer such questions. *Cockrum* v. *State* (1968), 250 Ind. 366, 234 N. E. 2d 479, 13 Ind. Dec. 288.

Appellant merely states the above objection abstractly and does not cite us to a particular place in the testimony where a witness was permitted to draw a conclusion. The question is therefore waived under Appellate Rule 8.2 (b) 5.

Appellant next contends that Instructions No. 2 and 5 were erroneously given over appellant's objection. Instruction No. 2 reads as follows:

"If you find from the evidence beyond a reasonable doubt, that the allegations of this indictment are true, and that

Billy Lee Napier willfully drove his automobile to the left of the center line at a time when his vision ahead was obstructed for a distance of less than five hundred feet and/or while attempting to pass several cars traveling in the same direction and failing to yield the right of way to an oncoming automobile or in a manner expressly forbidden by statute and thereby caused *the caused* the death of Henry Stidham, you may find the defendant guilty of involuntary manslaughter."

Appellant's objection to Instruction No. 2 is as follows:

"Also the defendant would object to the giving of Instruction #2; for the reason that it is also an improper statement of the law, because it refers only to willfully drove and it does not refer to willful, wanton and reckless conduct. It also refers in the Instruction 'was observed for a distance of less than five hundred feet,' which is not a proper statement of anything. It is not proper affidavit, it is not a part of the indictment, it is not a part of the law and it's not the proper instruction. The let's—see— see two, three and were the ones."

The above instruction although not artfully worded and not recommended as a model instruction could only be interpreted as instructing the jury that if they found that the appellant wilfully drove his automobile in a manner forbidden by statute thereby causing the death of Henry Stidham he could be found guilty of involuntary manslaughter. As previously stated in this opinion, this is a correct statement of the law. We, therefore, find no reversible error in the giving of Instruction No. 2.

Instruction No. 5 reads as follows:

"Members of the jury, I instruct you, if the defendant, through inadvertance, or lack of attention or thoughtless negligence, failed to see the other car involved in this accident, but in addition had willfully committed an unlawful act which placed another in physical danger and that such willfull and unlawful act resulted in the death of Henry Stidham, you may find this sufficient to support a conviction under the statute for involuntary manslaughter."

The objection to Instruction No. 5 reads as follows:

"Yes, we object to #5, for the reason it presupposes facts. Namely, that do not say—it does not indicate that they have

to find that the defendant was the driver of the automobile in question. It also leaves out the most important part of the law, that being willful and wanton misconduct. That's the objections and that's all the State has—or the defendant."

Here again the instruction is not recommended as a model instruction. However, we fail to see that it would mislead the jury. It does specifically state that if the jury finds the appellant had wilfully committed an unlawful act resulting in the death of Henry Stidham he could be found guilty of involuntary manslaughter. This is a true statement of the law. We, therefore, hold the trial court did not err in giving Instruction No. 5.

The trial court is, therefore, in all things affirmed.

Arterburn, C.J., and Hunter, J., concur; DeBruler, J., dissents with opinion; Prentice, J., not participating.

### DISSENTING OPINION

DeBruler, J.—On October 2, 1968, the day appellant's jury trial started, the Noblesville Daily Ledger, a newspaper of general circulation in Hamilton County, printed an article concerning a hearing held on September 30, 1968, on one of appellant's pre-trial motions. The article said:

"On Monday Judge Edward F. New, Jr. held that three 'newly discovered witnesses' in the case may remain unidentified until the trial. The prosecution maintains the three have feared the consequences of testifying. *The three were involved in a conversation with Napier in which he stated he was the driver of the car in which Stidham was killed. . . .*" (Emphasis added.)

The record discloses that not one witness ever testified in the trial of this cause as to a conversation with appellant in which the latter admitted being the driver of the death vehicle. At trial appellant testified that he was *not* the driver of the car.

On October 3, 1968, appellant called this article to the trial court's attention and the court held a hearing which revealed

that five jurors admitted having read the article. The trial court then proceeded to question the jurors in order to determine whether their having read the article would influence their decision in the case. The following is the relevant part of the record of that examination of the jurors:

> "Now you folks that read those articles, can you assure me that you can go ahead with this trial without any influence on your decision in this case, based upon anything you read in these articles? You sir? You think you can? I think it's got to be a little stronger than that. Are you sure you can?

JUROR: I'll say I'm quite sure.

THE COURT: All right good. Who else here?

JUROR: I'm positive sir.

THE COURT: All right good. Who else sir. Mr. Evans?

JUROR: (Answer is not audible)

THE COURT: Well you know the facts then?

JUROR: Right.

THE COURT: Well what I'm interested in, is whether or not you can continue as a juror during the rest of this trial and deliberate with your fellow jurors without anything that you read having any influence or bearing on your final decision.

JUROR: I can.

THE COURT: You can? About you? Have you read it?

JUROR: Yes I read it.

THE COURT: Can you disregard it?

Juror: (Answer not audible).

THE COURT: All right, Mr. Roberts?

JUROR: *No, fact is I don't think I read anything that wasn't brought out or that we have already heard here.* (Emphasis added.)

THE COURT: All right, good enough. All right show the defendant's motion is overruled."

Appellant made a motion for a mistrial which the trial court overruled and it is that ruling which is urged as error on appeal.

The Sixth Amendment to the Constitution of the United States and Art. 1, § 13, of the Constitution of the State of Indiana specifically guarantee to every accused the absolute right to a public trial by an impartial jury. This guarantee necessarily encompasses the requirement that the jury's verdict be based upon evidence received in open court, not evidence obtained from outside sources. *Sheppard* v. *Maxwell* (1966), 384 U. S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600; *Rideau* v. *Louisiana* (1963), 373 U. S. 723, 83 S. Ct. 1417, 10 L. Ed. 2d 663; *Baniszewski* v. *State* (1970), Ind., 261 N. E. 2d 359. In *Patterson* v. *Colorado* (1907), 205 U. S. 454, 27 S. Ct. 556, 51 L. Ed. 879, Mr. Justice Holmes stated:

"The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." 205 U. S. at 462.

The above quoted article was obviously the kind of outside influence which could undermine appellant's constitutional right to an impartial jury and the trial court, when the article was called to his attention by appellant, took the proper first step of determining whether any of the jurors had read the article. The record shows that five jurors admitted having read the article. It was then up to the trial court to decide the ultimate issue of whether there was a "reasonable likelihood that prejudicial news will prevent a fair trial". *Sheppard* v. *Maxwell, supra.* The *Sheppard* test was recently adopted by a unanimous Court in *Baniszewski* v. *State, supra,* and is clearly applicable here.

In order to resolve the ultimate issue the trial court proceeded to question the jurors who had read the article to determine whether having read the article would influence their decision in the case. Regardless of whether the trial court's question reflected the proper legal standard it is clear that in the case of two of the jurors, the record does not permit us to affirm the trial court ruling permitting them to remain on the jury.

First, it is clear that the last juror's answer to the trial court inquiry was ambiguous at best and could reasonably be interpreted as revealing that he had been greatly prejudiced by the article. That response was as follows:

"JUROR: No, fact is I don't think I read anything that wasn't brought out or that we have already heard here."

This answer was given in spite of the fact the juror admitted having read the article which stated that three witnesses would testify that appellant admitted driving the death car, and no such evidence was brought out at trial. It might have been that the juror had already forgotten part of the article and was not being influenced by it. On the other hand it would be reasonable to interpret his response as revealing that he had so absorbed the extra judicial allegation that he was treating it as if it had come out at the trial. Due to this latter possible interpretation of the juror's response, I would hold that the trial court erred in permitting the juror to remain on the panel without a thorough probing of his state of mind.

Second, it is obvious that we cannot determine how the fourth juror answered the trial court inquiry because the record merely shows an inaudible response. Therefore, we have no way to know how the juror rated his own ability to be impartial in spite of the article, and thus no way to review the trial court decision to permit the juror to remain on the panel. It is not sufficient to say that since the trial court left the juror on the panel he must have given an adequate answer to the trial court. The United States Supreme Court has held that in cases concerning the pre-judicial impact of media publicity the appellant tribunal has a duty to make an independent evaluation of the relevant facts. *Sheppard* v. *Maxwell, supra; Baniszewski* v. *State, supra.*

I believe my position is support by *Marshall* v. *United States* (1959), 360 U. S. 310, 79 S. Ct. 1171, 3 L. Ed. 2d 1250, where the jurors had been exposed through "news accounts" to information concerning the defendant's prior convictions and

other past conduct which the trial court ruled too prejudicial to be submitted to the jury. The court described the trial court procedure as follows:

"The trial judge on learning that these news accounts had reached the jurors summoned them into his chamber one by one and inquired if they had seen the articles. Three had read the first of the two . . . and one had read both. Three others had scanned the first article and one of those had also seen the second. Each of the seven told the trial judge that he would not be influenced by the news articles, that he could decide the case only on the evidence of record, and that he felt no prejudice against petitioner as a result of the articles. The trial judge, stating he felt there was no prejudice to petitioner, denied the motion for mistrial." 360 U. S. at 312.

In spite of that the Supreme Court reversed saying:

"We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecutor's evidence. . . . It may indeed be greater for it is then not tempered by protective procedures." 360 U. S. at 312, 313.

It is not crucial that in *Marshall* the evidence disclosed to the jurors in the news reports was ruled legally inadmissible in the trial court. An accused's constitutional right to an impartial jury is violated when there is a reasonable likelihood that the jury's decision will be influenced by *facts or allegations that were not presented to the jury during the trial.* Why they were not presented to the jury at the time is irrelevant. In *Marshall,* as in our case, the jurors were exposed to news reports of facts which were never submitted to the jury at the trial. As Justice Holmes said in *Patterson* v. *Colorado, supra:*

"The theory of our system is that the conclusions to be reached in a case will be *induced only by evidence and argument in open court, and not by any outside influence,* whether of private talk or public print." (Emphasis added.)

In future cases of this kind I recommend that the trial court follow the procedures outlined in the approved draft of the ABA Standards Relating to Fair Trial and Free Press. In particular, Standard 3.5(f) reads:

"(f) Questioning jurors about exposure to potentially prejudicial material in the course of the trial; standard for excusing a juror.

"If it is determined that material disseminated during the trial goes beyond the record on which the case is to be submitted to the jury and raises serious questions of possible prejudice, the court may on its own motion or shall on motion of either party question each juror, out of the presence of the others, about his exposure to that material. The examination shall take place in the presence of counsel, and an accurate record of the examination shall be kept. The standard for excusing a juror who is challenged on the basis of such exposure shall be the same as the standard of acceptability recommended in section 3.4(b), above, except that a *juror who has seen or heard reports of potentially prejudicial material shall be excused if reference to the material in question at the trial itself would have required a mistrial to be declared.*" (Emphasis added.)

Standard 3.4(b):

"(b) Standard of acceptability.

"Both the degree of exposure and the prospective juror's testimony as to his state of mind are relevant to the determination of acceptability. A prospective juror who states that he will be unable to overcome his preconceptions shall be subject to challenge for cause no matter how slight his exposure. If he has seen or heard and remembers information that will be developed in the course of trial, or that may be inadmissible but is not so prejudicial as to create a substantial risk that his judgment will be affected, his acceptability shall turn on whether his testimony as to impartiality is believed. If he admits to having formed an opinion, he shall be subject to challenge for cause unless the examination shows unequivocally that he can be impartial. A prospective juror who has been exposed to and remembers reports of highly significant information, such as the existence or contents of a confession, or other incriminating matters that may be inadmissible in evidence, or substantial amounts of inflammatory material, shall be subject to chal-

lenge for cause without regard to his testimony as to his state of mind."

Under this standard the trial court would have had to excuse the jurors who had read the article in question because any statement at the trial by a witness that there were three other witnesses who would testify that appellant admitted driving the car, when in fact there were no such witnesses would clearly have required a mistrial be declared.

The Standards also set out methods by which the trial court can minimize the publication of prejudicial information at critical times in the criminal process and thus possibly prevent this type of thing from occurring in the future.

NOTE.—Reported in 266 N. E. 2d 199.