ALBERT BOYLE KING *v.* STATE OF INDIANA.

[No. 1171S345. Filed May 22, 1973. Rehearing denied with opinion July 5, 1973.]

*Mrs. Harriette Bailey Conn,* Public Defender of Indiana, *Malcolm K. McClintick,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *John McArdle,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by indictment in the Allen Circuit Court with the crime of first degree murder. Upon motion of the appellant, venue was changed to the Kosciusko Circuit Court. Trial by jury resulted in a verdict of guilty as charged. Appellant was sentenced to the Indiana State Prison during life.

The record in this case was first filed with the Clerk of this Court on March 8, 1971. However, no brief was filed within the thirty days allowed under the Rules of this Court. A brief was tendered for filing on the thirty-first day. On November 30, 1971, this Court granted the appellant permission to file a belated appeal and appointed the State Public Defender as counsel for the petitioner, who re-filed the record in this case on February 28, 1972. Final briefing in the case was accomplished December 6, 1972.

The record reveals the following evidence:

On November 28, 1969, appellant was visiting James Pollard in Pollard's apartment next to the JLT Liquor Store in Fort Wayne, Indiana. Shortly after 1:00 P.M., appellant told Pollard that there was someone in the JLT parking lot he wanted to see, whereupon he left Pollard's apartment. State's witness Mary Sallie McGraw, whose apartment was above Pollard's apartment, saw the appellant step from Pollard's porch and start toward the liquor store. After a few steps, he stopped, pulled a pistol from his hip pocket and shot the decedent as he was returning to his car from the liquor store. Up to the time of the shooting, neither the deceased nor the appellant spoke to each other, nor did the deceased have anything in his hands. After appellant had fired the shot, he placed the pistol back in his pocket and said, "You black son-of-a-bitch, you." Appellant then attempted to return to Pollard's apartment, saying, "I got the son-of-a-bitch." However,

Pollard refused to allow appellant to re-enter his apartment; whereupon, appellant drove away in his own car.

When police arrived, the deceased was dead. Police found no weapon on or near decedent's body. An autopsy revealed the cause of death to be hemorrhaging caused by a bullet which traveled through both arms and the chest of the deceased. There were powder burns on the right sleeve of decedent's jacket at the point of entry of the bullet.

At the time of his arrest, appellant told police officers that Jimmy King had "been messing with me a long time."

A week before the shooting, appellant had visited the deceased's wife and told her that her husband was going with appellant's wife; that he would not stand for it; and that he was going to kill his wife and Jimmy King, the decedent.

Appellant testified in his own behalf stating that Jimmy King had taunted him about his wife and, several times, had threatened to kill him. Appellant testified that immediately before the shooting, he saw his brother-in-law in the parking lot and went out to collect a debt that was owed him. He stated that while he was in the parking lot Jimmy King saw him, threatened him and that appellant shot King in self-defense when he reached into his pocket as if for a gun.

Appellant first claims the trial court erred in allowing the State to cross-examine and impeach its own witness James Pollard. Pollard at first testified that he clearly remembered the entire incident on the day of the shooting. In his initial testimony, Pollard omitted any statement by the appellant following the shooting, whereupon the State asked him if he recalled making a prior statement and asked him to re-read his statement to refresh his recollection. This was done over the objection of appellant. After re-reading his prior statement, Pollard then testified that after the shooting the appellant said, "I got the son-of-a-bitch." Appellant claims that allowing the State to proceed in this manner in questioning Pollard was in violation of IC 1971, 34-1-14-15, BURNS' IND.

STAT. ANN., 1968 Repl., § 2-1726, for the reason that Pollard had made no prior inconsistent statements. Appellant claims that prior inconsistent statements are a prerequisite to a cross-examination of one's own witness.

This situation with which the State was faced upon Pollard's initial testimony may fall within one of two categories. If the witness is, in fact, hostile to the State (a fact which might well have been discernible to the trial judge, but is not necessarily reflected in this record), and because of his hostility was deliberately omitting certain testimony, the State would then be well within its rights in impeaching him by the use of his prior statement under the statute above cited. If, however, the witness was not hostile, but merely because of the passage of time or possibly through the pressures and excitement of testifying inadvertently omitted certain crucial facts, the State would be well within its right to use the witness' prior statement to refresh his recollection. *Turner* v. *State* (1972), 258 Ind. 267, 280 N.E. 2d 621, 30 Ind. Dec. 143; 30 I. L. E., *Witnesses* §§ 95-96. Although it may have been apparent to the trial judge who could observe the demeanor of the witness, this record does not disclose which of the two categories Pollard fit. In any event the trial court did not commit error in permitting the State to use Pollard's prior statement to complete his testimony.

Appellant next claims the court erred in denying a continuance when State's Witness Mary Sallie McGraw testified during the trial, apparently to the surprise of both the State and the appellant, that "there was lots of people out there," referring to the parking lot at the time of the shooting. Upon further questioning, she stated that one of those persons was a Will Richardson and a man whose first name was Mose but whose last name she did not know. She stated that there were as many as six people in addition to the appellant and the decedent. The witness stated there were cars in the parking lot; that Willie Richardson and Mose were standing beside

a car talking, and the witness did not know whether they saw the shooting or not.

On the day following this cross-examination of Miss McGraw, the appellant moved for a continuance in order to attempt to locate Willie Richardson and Mose. However, the trial court denied a continuance. The granting of a continuance was within the discretion of the trial judge. IND. RULES OF PROC., TR. 53.4. Even with a showing of surprise, there must also be a showing that the defendant would be harmed by a denial of the continuance. *Napier* v. *State* (1971), 255 Ind. 638, 266 N.E. 2d 199, 24 Ind. Dec. 485; *Jay* v. *State* (1965), 246 Ind. 534, 206 N.E. 2d 128, 5 Ind. Dec. 231.

In the case at bar, there was no showing at the time of Miss McGraw's testimony that either Willie Richardson or Mose saw or heard anything concerning the shooting, nor was there any indication that they were at that time available as witnesses. It was not until the following day that appellant made his motion for a continuance in order to hunt the witnesses, yet appellant did not see fit submit any affidavits or make any representation to the trial court that any effort whatever had been made the evening before to locate the witnesses. In addition, following his conviction, the appellant had ample time pending the filing of his motion to correct errors, to locate these witnesses, and if their testimony was favorable to him to submit the same by way of affidavit as newly discovered evidence. In the absence of all of this and in the face of this record, we cannot say that there has been any showing whatever that the appellant was harmed by a denial of a continuance.

We find no reversible error in this record.

The trial court is affirmed.

Arterburn, C.J., and Prentice, J., concur; DeBruler and Hunter, JJ., concur in result.

NOTE.—Reported in 296 N. E. 2d 113.