HARVEY ROSS YOUNG *v.* STATE OF INDIANA.

[No. 3-973A116. Filed September 19, 1974. Rehearing denied October 31, 1974. Transfer denied October 17, 1975.]

*Patrick J. McNamara,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—On November 24, 1971, defendant-appellant Harvey Ross Young was charged by indictment in two counts with 1) involuntary manslaughter (IC 1971, 35-13-4-2, Ind. Ann. Stat. § 10-3405 (Burns Supp. 1974)), and 2) reckless homicide (IC 1971, 9-4-1-54(a) (Burns Code Ed.)). To such charges, appellant pleaded not guilty. Following trial before a jury, appellant was found guilty as charged in both counts of the indictment. Thereafter, having found that a penalty may be imposed on only one of the verdicts of guilty, the court entered judgment on the verdict on the count charging involuntary manslaughter, ordered appellant sentenced to the custody of the Department of Corrections for a period of not less than one nor more than ten years and fined appellant in the penal sum of $1,000. Appellant's motion to correct errors was subsequently overruled and this appeal followed.

The evidence most favorable to the State reveals that at approximately 7:00 P.M. on September 11, 1971, appellant Young was driving east on Dragoon Trail in St. Joseph County near Mishawaka, Indiana. Mrs. Betty Patterson and three of her children, Sally, Dale and Mark, were passengers in Young's automobile. Young approached the intersection of Dragoon Trail and Mason Road, turned on his left turn signal and slowed to make a left turn onto Mason Road. As he turned across Dragoon Trail, his car was struck by an automobile driven by a Gary W. Parrish which, at the time, was traveling

west on Dragoon Trail. Sally Patterson died from the injuries she sustained in the collision.

The record further reveals that Young and the Pattersons had spent the afternoon and early evening traveling around Mishawaka visiting friends. During such time Young and Betty Patterson had visited two taverns. Witnesses gave differing testimony as to the amount of alcohol Young consumed that day—from two or three beers and one drink to seven or eight beers and several drinks. A blood sample taken from Young at the hospital approximately one-half hour after the accident disclosed the alcohol content of his blood to be .295%. Police officers at the scene of the collision found three recently emptied beer cans near Young's overturned automobile. Immediately prior to the collision, Young had been spinning and squealing his tires to amuse the two Patterson boys. The driver of an automobile which was traveling ahead of Young in the same direction on Dragoon Trail testified that Young seemed to be weaving. The driver also testified that he commented at the time to his wife, "What's the matter with that man he is all over the road." Young testified that he noted Parrish's automobile approaching but thought it was several blocks away as he started to turn onto Mason Road.

The first issue presented for review is whether the trial court erred in overruling appellant's motion to quash the indictment and appellant's motion to strike allegedly improper language from the indictment.

Count I of the indictment which charged appellant with involuntary manslaughter, omitting caption and formal parts, reads as follows:

"That on or about the 11th day of September, 1971, at and in the County of St. Joseph, State of Indiana, one HARVEY R. YOUNG did then and there unlawfully, feloniously and without malice, expressed or implied, involuntarily but in the commission of some unlawful act, kill one SALLY PATTERSON by then and there while driving and operating a certain motor vehicle, to-wit: a

1964 Oldsmobile hardtop in an Easterly direction upon and along Dragoon Trail, an East and West public road in the County of St. Joseph, State of Indiana, at a point at the intersection of Dragoon Trail and Mason Road in that HARVEY R. YOUNG did then and there recklessly and unlawfully:

(a) drive and operate his 1964 Oldsmobile upon and along said Dragoon Trail while he was then and there under the influence of alcoholic beverages; and

(b) drive and operate his 1964 Oldsmobile to the left of the center line of the main and travelled portion of Dragoon Trail; and

(c) unlawfully and recklessly fail to yield the right of way to other motor vehicles at the intersection of Dragoon Trail and Mason Road in St. Joseph County.

"And that as the proximate result of the said unlawful, reckless and felonious acts aforesaid and each of them, the said HARVEY R. YOUNG did then and there and thereby inflict upon the said SALLY PATTERSON who was then and there riding as a passenger with the said HARVEY R. YOUNG certain mortal wounds and injuries of which said mortal wounds and injuries the said SALLY PATTERSON then and there sickened and languished and from which said mortal wounds and injuries on the 11th day of September, 1971, in the County and State aforesaid, then and there died, contrary to the form of Statute in such cases made and provided and against the peace and dignity of the State of Indiana."

Count II of the indictment, charging appellant with reckless homicide, is similarly worded.

Prior to trial, Young filed a motion to quash the indictment contending, among other things, that the facts stated did not constitute a public offense because the indictment did not allege that Mason Road is a public highway. Young also filed a motion to strike allegation "(b)" from the indictment because it failed to state facts or circumstances which would make driving to the left of the center line an unlawful act. Both motions were overruled.

On appeal, appellant contends that his motion to quash should have been sustained for the reason that failure to

allege that Mason Road is a public highway was a fatal defect.

Young was charged with reckless homicide in violation of IC 1971, 9-4-1-54(a), *supra*. This offense is not one which is prohibited only if committed on a public highway. IC 1971, 9-4-1-22 (Burns Code Ed.), states that the provisions of Articles IV and V of the Traffic Act, which includes the offense of reckless homicide, apply to public highways and elsewhere throughout the State. Therefore, as to the charge of reckless homicide, an allega- tion that the offense was committed on a public highway is unnecessary. However, the involuntary manslaughter charge alleges commission of other offenses which, under IC 1971, 9-4-1-22, *supra*, are offenses only when committed on the public highways, such as driving to the left of the center line (IC 1971, 9-4-1-69 (Burns Code Ed.)), and failing to yield the right-of-way (IC 1971, 9-4-1-83 (Burns Code Ed.)). However, the indictment clearly indicated that these offenses occurred on Dragoon Trial which is alleged to be a public highway. Therefore, the failure to allege that Mason Road is a public highway is not a fatal defect. The motion to quash the indictment was properly overruled.

Appellant also contends that his motion to strike should have been sustained for the reason that without allegations of circumstances in which driving to the left of the center line is unlawful, a bare allegation that appellant did drive left of the center line is surplusage.

The indictment alleges that the unlawful act which resulted in the death of Sally Patterson occurred on Dragoon Trail at the road's intersection with Mason Road. IC 1971, 9-4-1-69, *supra*, provides, in part, as follows:

"(a) No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

* * *

"2. When approaching within one hundred [100] feet of or traversing any intersection or railroad grade crossing.

"3. \*\*\*

"(b) *The foregoing limitations shall not apply upon a one-way roadway.*" (Emphasis supplied.)

The only exception to this statute concerns one-way roadways. The indictment alleges that Dragoon Trail is a two-way road. Therefore, the motion to strike this allegation of the indictment because of a failure to negate circumstances where the act alleged was not unlawful was properly overruled.

The next issue to be considered is whether the trial court erred in refusing to give appellant's tendered Instruction No. 10, which reads as follows:

"Under the law of this State the rule of the nonproduction of a witness within the power of the party to be produced goes so far that the failure to produce available witnesses is taken as negativing the fact alleged.

"It was the duty of the State to bring forward all witnesses in the case who would testify in support of the crime charged. It did not bring forward the driver of the other car in the accident. Accordingly, the nonproduction of this witness by the State permits and supports the inference to be drawn by you that his testimony would have been unfavorable to the State."

Appellant Young contends that this instruction is a correct statement of the law and is applicable to the instant case by reason of the fact that the State failed to produce an available witness, Gary Parrish. Young asserts that Parrish's testimony would have been relevant to a crucial issue in the case—whether Young was driving in a reckless manner and whether his reckless acts were the proximate cause of Sally Patterson's death.

The tendered instruction is a correct statement of the law as stated in *Hiner* v. *State* (1925), 196 Ind. 594, 149 N.E. 168. However, the applicability of this rule has been limited by recent cases to instances in which the nonproduced witness is not equally available to both parties. *Gatchett* v. *State* (1973), 261 Ind. 109, 300 N.E.2d 665, 667.

Young has not alleged that witness Gary Parrish was unavailable to him, only that he did not have equal access to information which Parrish might have revealed had the State called him. Young obviously knew the identity of the driver of the other car; he states in his brief that this witness was present in the courtroom during the trial. Young does not contend that the State, in any way, prevented him from discovering what Parrish would have been able to testify to, only that the State did not supply him with information concerning Parrish's physical condition which may have contributed to the collision. While, under the circumstances, the State might have been expected to call Parrish, his testimony, it appears, was not essential to the State's case. It has not been shown that the State embarked on any conscious design to deny Young pertinent information which Parrish may have possessed. It must, therefore, be concluded that this case falls within the exception to the adverse presumption rule which was recognized in *Gatchett* v. *State, supra.*

The next issue presented is whether the trial court erred in overruling appellant's objection to certain remarks made by the prosecutor during his final argument. One of the key issues at trial was whether Young was intoxicated at the time of the collision. To rebut the statutory presumption of intoxication arising from the testimony of Lieutenant Paul Asa of the Indiana State Police that the alcohol content of Young's blood was .295%, Young attempted to cast doubt on the validity of the test through a showing of inadequate precautions to insure that the blood taken from him and that tested by Lieutenant Asa was the same. In his final argument, Young emphasized his assertion that a mixup of some sort occurred at the State Police Laboratory. The prosecutor began his final argument with the following statement:

"MR. READY: If I may address myself to a couple things Mr. McNamara said. First of all as far as the blood sample is concerned, there is in legal terms called a chain of evidence and if something like a blood sample

is going to be introduced into evidence it must be shown that the possession of that thing was handled in such a way, is calculated so as to preserve the possession of it. You don't have to say there was someone sitting in front of the safe for fifteen days when it was taken out. Had this particular blood sample taken from his arm, had the chain of evidence been broken, had it been misplaced it would not have been in evidence. The Judge would not have permitted it. So I don't think there is anything faulty in the blood sample."

At the close of the prosecutor's final argument, the defense objected and the following exchange between defense counsel and the court took place:

"MR. MCNAMARA: I want to make an objection to the defect of continuity of handling of the blood sample, that it would have been excluded by you. I think the handling could have been some way deficient to give reasonable doubt in the minds of the jurors and still not be excluded.
"THE COURT: Do you want to make a rebuttal statement?
"MR. MCNAMARA: I want to make my objection in the presence of the jury. I want to make my statement in the presence of the jurors while the jury is still here because I think it is prejudicial.
"THE COURT: I am overruling it because you didn't make it at the time it was made."

The defense made no rebuttal statement and made no further objections or requests with regard to the statement of the prosecutor.

Young contends that his objection at the close of the prosecutor's argument was timely and sufficient to preserve the issue on appeal. Young further contends that the prosecutor's remark was not a correct statement of the law and could have erroneously led the jury to believe that it was required to accept the result of the blood test as conclusive evidence of Young's intoxication.

The prosecutor's statement, to the extent that it implied that the trial court's ruling in favor of the admissibility of the blood test results was conclusive as to the identity of the blood sample and the accuracy of the test results, was an incorrect statement of the

law. See: *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652. Since it was phrased as a statement of law rather than a statement of the prosecutor's opinion based on the evidence presented at trial it was improper. See: *Garrett* v. *State* (1973), 157 Ind. App. 426, 300 N.E.2d 696, 38 Ind. Dec. 321 (transfer denied).

However, because of Young's failure to properly preserve this issue for appeal, the effect of these remarks need not be discussed. The proper method to preserve error predicated upon misconduct of opposing counsel in making misstatements of the law during closing argument is to promptly make objection and request the court to give an instruction counteracting the harmful effect of the objectionable language or argument. *Adkins* v. *Elvard* (1973), 155 Ind. App. 672, 294 N.E.2d 160, 35 Ind. Dec. 675 (transfer denied).

Young did not interrupt the prosecutor's closing argument to object to the remarks. While he did object immediately after the prosecutor finished, he failed to request the trial court to take any curative action such as admonishing the jury to disregard the improper remark, giving a final instruction to counter the effect of the statement or declaring a mistrial.

It should, in addition, be noted that the defense broached the subject of the blood sample in its final argument:

"Now ladies and gentlemen, based on the evidence, based on the testimony, I am saying to you that something went wrong down at the laboratory, the State Police Laboratory. I don't have any idea, I asked him does he ever make a mistake and he said no. And I said are you infallible and he said no to that too.***.

". . . Something went wrong down in that laboratory. I don't believe the test results. Officer Asa was not able to explain, at least to my satisfaction, and I think you would agree with me, that he was not able to account for the whereabouts of that sample from 9-14-71, almost three weeks later, to October 5, 1971, and if it were handled in that period. There was no testimony that I can recall as

to whether that sample had been opened or whether it had a seal on it, whether it possibly had been opened and reclosed. Where is the testimony as to that? Or after he got it out there with twenty-five things, possibly sometimes less, items on the table and everyone were in a place and he never mistakes, yet he is fallible. ***."

The prosecutor's statement could be considered as a response to Young's argument. A statement which is otherwise objectionable may be justified by the fact that it was invited or provoked by counsel for the defendant. *Garrett* v. *State, supra.* In light of Young's argument which could have invited the allegedly improper remarks of the prosecutor and his failure to request curative action, any issue with respect to the propriety of those remarks must be deemed waived on appeal. An examination of the record including the final arguments does not reveal that appellant was prejudiced by the prosecutor's comments.

The next issue is whether the trial court erred in overruling appellant's motion for a new trial which was based upon newly discovered evidence.

Young contends that his motion to correct errors alleged facts which clearly indicate that evidence concerning Parrish's physical condition could not be obtained prior to trial notwithstanding his use of due diligence. Appellant further asserts that had such evidence been available at trial he could not have been convicted since it shows that the proximate cause of the collision which resulted in Sally Patterson's death was Parrish's intoxication and resulting inability to maintain control over his automobile.

In *Kelly* v. *Bunch* (1972), 153 Ind. App. 407, at 409, 287 N.E.2d 586, at 588-589, 32 Ind. Dec. 692 (transfer denied), it is stated that:

"A motion for a new trial based on newly discovered evidence should be received with great caution and the alleged evidence should be carefully scrutinized. The newly discovered evidence must be material, and must be more than just cumulative or impeach-

ing. The party seeking a new trial because of newly discovered evidence must show that the evidence is such that it could not have been discovered before the trial by the exercise of due diligence, and must show that the evidence is such that it would reasonably and probably result in a different verdict. The granting of a new trial because of newly discovered evidence is a matter which rests within the sound discretion of the trial court, whose decision will be disturbed only for a manifest abuse thereof." See: *Keyton* v. *State* (1972), 257 Ind. 645, 278 N.E.2d 277; *Taylor* v. *State* (1971), 256 Ind. 92, 267 N.E.2d 60; *Fultz* v. *State* (1968), 250 Ind. 43, 233 N.E.2d 243.

Appellant admits of having knowledge prior to trial that Parrish had been drinking before the collision and that such fact was known to the police officer who investigated the accident. However, Young does not show that he made any effort to discover the extent of Parrish's intoxication and what effect, if any, this had upon the collision. Appellant further asserts that the police accident report which stated that Parrish had had one beer prior to the collision concealed the true facts and misled him in his belief that further inquiry would have been futile. The trial court, however, would have been justified in concluding that appellant failed to exercise due diligence where appellant did not request the prosecutor to disclose evidence favorable to the defense—specifically any reports concerning Parrish's intoxication; take a deposition of Parrish or conduct an independent investigation of Parrish's activities on the day of the accident. Appellant failed to avail himself of any of these procedures which could have led to the disclosure of the evidence alleged to be newly discovered, and did not adequately justify such failure. Accordingly, the trial court in denying the motion for a new trial could reasonably have concluded that appellant failed to exercise due diligence.

Moreover, the trial court could also have concluded that the newly discovered evidence would not have resulted in a different verdict. In *Anderson* v. *State* (1928), 200 Ind. 143, at 148, 161 N.E. 625, at 627, it is stated:

"The newly discovered evidence, in order to warrant the granting of a new trial, must be very material and decisive in character and be such as to raise a strong presumption that it, in all probability, will bring about an opposite result on another trial." (Citations omitted.)

The newly discovered evidence in the instant case discloses that the alcohol content of Parrish's blood was .09% at the time of the accident. If Parrish had been the defendant, such evidence would have been relevant and admissible but it would not have been entitled to *prima facie* effect as an indicator of whether he was under the influence of intoxicating liquor. See: IC 1971, 9-4-1-56 (Burns Code Ed.).

Our Supreme Court in *Emerson* v. *State* (1972), 259 Ind. 399, at 407, 287 N.E.2d 867, at 872, stated that,

"In deciding whether a piece of newly discovered evidence would produce a different result the presiding judge may properly consider the weight which a reasonable trier of fact would give it and, while so doing, may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case."

Evidence of Parrish's degree of intoxication, without other evidence tending to show that his conduct was the proximate cause or independent intervening act, would not be likely to produce a different result.

Appellant also argues that he was denied a fair trial by reason of the State's alleged suppression of the results of the blood alcohol test conducted on Parrish. Such contention, however, is not to be found in appellant's motion to correct errors and must, therefore, be deemed waived.

The final issue to be considered is whether appellant's conviction is supported by sufficient evidence.

Appellant contends that the evidence viewed in a light most favorable to the State fails to indicate the commission of some act of reckless disregard for the safety of others.

Reckless homicide is defined by IC 1971, 9-4-1-54(a), *supra,* as follows:

"(a) Any person who drives a vehicle with reckless disregard for the safety of others and thereby causes the death of another person shall be guilty of the offense of reckless homicide. ***."

Involuntary manslaughter is defined by IC 1971, 35-13-4-2, *supra,* as follows:

"Involuntary Manslaughter. Whoever kills any human being without malice, expressed or implied, involuntarily but in the commission of some unlawful act, is guilty of involuntary manslaughter, ***."

The acts alleged to be reckless in the reckless homicide charge and unlawful in the involuntary manslaughter charge are the same:

a) driving while under the influence of intoxicating liquor
b) driving to the left of the center line
c) failure to yield the right-of-way.

Reckless, homicide is a form of involuntary manslaughter and both crimes require proof of the same elements to sustain a conviction. *Cichos* v. *Indiana* (1966), 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175. Therefore, if the evidence is sufficient to sustain a conviction of one, it is sufficient to sustain a conviction of the other.

The evidence most favorable to the State is sufficient to support a finding that Young was driving while under the influence of intoxicating liquor. Such evidence shows that Young had consumed numerous beers and drinks in a short period of time before the collision and that his blood alcohol content was far in excess of the amount defined by statute as *prima facie* proof of being under the influence of intoxicating liquor.

Causing the death of another while driving under the influence of intoxicating liquor is a separate and distinct offense defined by IC 1971, 9-4-1-54(b)(1) (Burns Supp. 1974). Because of the existence of this statute, proof of driving while under the influence of intoxicating liquor is not sufficient, in itself, to sustain a conviction

of reckless homicide. *DeVaney v. State* (1972), 259 Ind. 483, 288 N.E.2d 732.

However, driving while intoxicated in conjunction with excessive speed or driving in a dangerous manner has been found to be sufficient. *Kidwell v. State* (1969), 252 Ind. 585, 251 N.E.2d 119; *Broderick v. State* (1967), 249 Ind. 476, 231 N.E.2d 526.

In the instant case, the evidence discloses that in conjunction with driving while intoxicated, Young had begun a left turn at an intersection in front of an oncoming car which had the right-of-way. This act was a violation of IC 1971, 9-4-1-82 (Burns Code Ed.), and would clearly constitute negligence. However, mere negligence is not sufficient to show reckless disregard for the safety of others. *Napier v. State* (1971), 255 Ind. 638, 266 N.E.2d 199.

Reckless disregard for the safety of others is shown only when the operator of an automobile voluntarily performs an improper or wrongful act under circumstances in which his action evinces an entire abandonment of any care, and a needless indifference to results which may follow, and he recklessly takes the chance of an accident happening without intent that an accident may occur. *Boswell v. State* (1968), 250 Ind. 607, 238 N.E.2d 283.

Whether Young's act of turning in front of an oncoming car exceeded mere negligence and became a reckless act was a question of fact for the jury to resolve. The fact that a collision occurred as Young began the turn could reasonably have permitted the jury to infer that the other car was either approaching at a high rate of speed or was almost upon the intersection when Young began the turn. Since Young admitted knowledge that a car was approaching, the jury was entitled to infer that Young's act of turning in the face of known danger showed a reckless disregard for the safety of his passengers. Accordingly, there is sufficient evidence to sustain both the conviction of reckless homicide and the conviction of involuntary manslaughter.

No reversible error having been demonstrated, the judgment of conviction entered by the trial court is affirmed.

Affirmed.

Garrard and Staton, JJ., concur.

NOTE.—Reported at 316 N.E.2d 435.