**Steven S. SPRINGER, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 31A01–0110–CR–368.

Court of Appeals of Indiana.

Dec. 3, 2002.

Matthew Jon McGovern, Louisville, KY, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Steven S. Springer, Jr., appeals from the jury's verdict finding him guilty of Criminal Recklessness, a Class C felony.[1] He presents two issues for our review which we restate as: (1) whether the trial court erred in refusing three of Springer's tendered jury instructions and (2) whether the restitution order was appropriate.

We reverse.

The facts most favorable to the judgment reveal that Phillip Crain had a party on the night of November 5, 1999 at his parent's home. Springer's son, who was not invited to the party, showed up and was told to leave. When he refused, he was attacked and beaten by Phillip. Springer's son then left the party and went home. The following morning, Springer learned that his son had been beaten-up. He and his wife went to the Crain residence to confront Phillip. Before leaving his home, Springer retrieved his handgun to carry with him.

Upon arriving at the Crain residence, Springer loaded a bullet into the chamber of the handgun. Springer knocked on the door and hollered at the boys inside to answer the door. Springer gained entry into the home after one of the boys who was at the residence opened the door. Once inside, Springer heard noise coming from behind the basement door. He approached the door and opened it. According to Springer, as he opened the door, he stepped back and stumbled. When he stumbled, the gun fired.[2] The bullet passed through a refrigerator and a wall before striking an individual in the chest. Springer then took the wounded individual to the hospital.

### I

### *Jury Instructions*

Springer contends that the trial court erred in refusing his tendered jury instructions on negligence and accident. Springer contends that the instructions were necessary to explain his defense to the criminal recklessness charge.

---

1. Ind.Code § 35–42–2–2 (Burns Code Ed. Repl.1998).

2. There was no evidence that the incident occurred other than as described by Springer. Of course the jury was free to disbelieve the version given by Springer.

Trial courts are given broad discretion in instruction of the jury. *Patton v. State,* 760 N.E.2d 672, 674 (Ind.Ct.App. 2002). The trial court's decision in instructing the jury is reviewed for an abuse of discretion. *Id.* In instructing a jury, the trial court has a statutory duty to state to the jury all matters of law which are necessary for its information in giving its verdict. Ind.Code § 35–37–2–2(5) (Burns Code Ed. Repl.1998); *Dayhuff v. State,* 545 N.E.2d 1100, 1102 (Ind.Ct.App.1989), *trans. denied.* "As a general rule, a defendant in a criminal case is entitled to have the jury instructed on any theory of defense which has some foundation in the evidence." *Dayhuff,* 545 N.E.2d at 1102. This is so even if the evidence supporting the defense is weak and inconsistent. *Id.* However, the evidence must have some probative value to support the defense. *Id.*

In *Sipp v. State,* 514 N.E.2d 330 (Ind.Ct. App.1987), this court reviewed a trial court's failure to give the jury the defendant's tendered instructions on negligence as his defense to reckless homicide. In determining that the trial court erred in refusing to give some of the tendered instructions, this court relied upon the decision in *Cichos v. State,* 243 Ind. 187, 184 N.E.2d 1 (1962), wherein our Supreme Court addressed appellant's contention that the trial court erred in failing to give his tendered instructions on negligence. The appellant had been charged with reckless homicide and involuntary manslaughter following an accident in which his vehicle hit another vehicle head-on, resulting in the death of two occupants in the other vehicle. Cichos tendered instructions stating that his negligence could not give rise to criminal liability for the crimes of reckless homicide or involuntary manslaughter. In reaching its decision, our Supreme Court stated:

"Whether the evidence in this case establishes that the deaths alleged in the indictment occurred from a mere accident, from negligent conduct or from willful and/or wanton misconduct so as to amount to recklessness, is dependent on the weight given the various aspects of the case and the evidence by the jury. The very purpose of the jury is to determine, after deliberation and pursuant to the court's instructions, the legal category into which the jury feels the defendant's conduct falls. The appellant's theory of the evidence and the law establishing such theory was never given to the jury in any instructions." *Cichos,* 243 Ind. at 192, 184 N.E.2d at 3.

The Supreme Court concluded by determining that the trial court's failure to give the tendered instructions constituted reversible error and remanded for a new trial. *Id.*

In *Sipp,* this court determined that the failure of the trial court to give the tendered instructions prevented Sipp from establishing his theory of the evidence and the law to the jury through any instructions. 514 N.E.2d at 332. This court determined that the tendered instructions on negligence were not covered by the instructions given by the trial court, which stated that accident was a defense unless the act was committed recklessly. *Id.* The failure to give the tendered negligence instructions was held to be reversible error, and the cause was remanded for a new trial. *Id.* Concurring in the decision, Judge Garrard stated:

"Thus, the court's refusal to give instructions as to what does not constitute recklessness is not rendered harmless because of the instruction given as to what would constitute recklessness. Indeed, I have no quarrel with holding that in cases where the understanding of a particular term is crucial, the court

may not refuse a correctly drawn instruction that serves to amplify the definition by insuring that the jury understand the difference between the crucial conduct and some closely similar conduct. The purpose of instructions is to fairly advise the jury on the law applicable to the case." *Id.*

In refusing to give tendered instructions Number 2 and Number 3 to the jury, the trial court stated that the case was "not about negligence." Transcript at 437. The trial court further stated that the State did not have to prove negligence so the "instructions concerning negligence go to something that is not an issue before the jury." *Id.* As the trial court further elaborated, to say that Springer was negligent is the same as the jury finding that the State had not proved that Springer was reckless. To the trial court, finding Springer negligent is the same as the State not proving his recklessness.

The trial court's reasoning has merit. It is true that the State had to prove that Springer was reckless, and if it failed, the jury would be required to acquit Springer. It would not matter if the jury found that Springer was negligent so long as it did not find that he was reckless. However, as was true in *Sipp* and *Cichos,* the jury was dealing with an issue in which it was imperative that the jurors understand the difference between a party being negligent and a party being reckless. Springer argued throughout the trial that he was only negligent. During deliberations, the jury sent a note to the trial court requesting the legal definition of negligence. From this, we can deduce only that there was some question among the jury about whether Springer was negligent or reckless. Had the jury received an instruction defining negligence, the decision of the jury may have been different because the jury could have used the legal definition of

negligence to aid in its deliberations. Based upon the holdings in *Sipp* and *Cichos,* Springer was warranted in his request to have the jury instructed on the negligence theory of his defense.

■ However, while the jury should have been instructed on Springer's negligence defense, the tendered instructions should have been given only if they meet the requirements set out for our review of the failure to give such instructions. When reviewing a trial court's decision to refuse a tendered instruction, this court considers: (1) whether the refused instruction is a correct statement of the law; (2) whether evidence supported giving the instruction; (3) whether the instruction repeats material adequately covered by other instructions; and (4) whether the substantial rights of the tendering party were prejudiced by the failure to give the instruction. *McCarthy v. State,* 751 N.E.2d 753, 755 (Ind.Ct.App.2001), *trans. denied.*

We begin by analyzing tendered Instruction No. 2, which states:

*"Recklessly Defined*

A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious and unjustified disregard of the harm that might result therefrom, and the disregard involves a substantial deviation from acceptable standards of conduct. This requires the State to prove more than mere negligence on the behalf of the Accused." Appendix at 175.

The State contends that the instruction was an incorrect statement of the law because the last sentence of the definition noted that the State was required to prove more than mere negligence and that the instruction was adequately covered by Final Jury Instruction No. 5 which defined "recklessly." There is no dispute that the evidence supported the instruction. Also,

the instruction as tendered defining "recklessly" was a correct statement of the law as it follows the statutory definition of "recklessly." *See* Ind.Code § 35–41–2–2(c) (Burns Code Ed. Repl.1998).

The State's contention that the last sentence to the instruction made it an incorrect statement of the law is unfounded. While the statutory definition of "recklessly" does not include a reference to negligence, it cannot be disputed that to prove a defendant was reckless the State must prove that the party was more than merely negligent. *See Warner v. State,* 577 N.E.2d 267, 269 (Ind.Ct.App.1991) (stating that to prove reckless homicide, State must show that defendant acted recklessly and not merely negligently). To include that negligent conduct is not the equivalent of reckless conduct in a jury instruction defining "recklessly" does not make the definition an incorrect statement of law. On the contrary, the tendered instruction correctly stated that the State must prove more than mere negligence to prove recklessness.

Turning to whether the tendered instruction was adequately covered by the other instructions which were given, it is undisputable that the definition of "recklessly" itself was adequately covered. However, the portion of the instruction which discussed negligence was not included in any instructions. Because the jury should have been instructed on the theory of Springer's case, and that theory of negligence was not covered by any other instructions, Instruction No. 2 should have been given to the jury as Springer's substantial rights were most likely prejudiced by the failure of the trial court to explain the legal concept of negligence.

Springer also challenges the trial court's refusal to give tendered Instruction Number 3 to the jury. Instruction Number 3 stated:

"Negligence is the failure to do what a reasonably careful and prudent person would have done under the same or like circumstances, or the doing of something which a reasonably careful and prudent person would not have done under the same or like circumstances; in other words, negligence is the failure to exercise reasonable or ordinary care." App. at 176.

The State challenges Instruction Number 3 by arguing that the instruction contained a term of art—"reasonable and ordinary care"—which would have required a further instruction.[3] The State contends that according to the holding of *Smith v. State,* 422 N.E.2d 1179 (Ind.1981), the trial court did not abuse its discretion in denying the instruction because of the failure of Springer to tender an additional instruction defining "reasonable and ordinary care." In *Smith,* our Supreme Court held that an instruction was properly refused because it contained a term of art for which a further instruction was not tendered, and the tendered instruction did not place the crime of criminal recklessness in proper context in the case. Our Supreme Court determined that this combination of factors made the instruction confusing. *Id.* at 1184.

While no further instruction was tendered which defined the term "reasonable and ordinary care," such an instruction was not necessary as the definition of negligence which was tendered would not have confused the jury. Rather, defining "negligence" for the jury would have aided the jury in determining whether the State had proved that Springer was reckless in his

---

**3.** The State contends that "reasonable and ordinary care" is a term of art because there

is a pattern jury instruction defining the phrase.

actions in shooting the handgun. It is doubtful that defining the phrase "reasonable and ordinary care" would have provided any additional clarity to the jury in determining whether Springer was reckless as the State charged or negligent as he claimed. Even if an additional instruction would have provided clarity to the jury, the tendered instructions were not confusing without the additional instruction.

The State also contends that the evidence did not support the instruction on negligence. Rather, the State asserts that the evidence which showed that Springer drove to the Crain residence while angry and went into the house with a loaded gun indicates that he was reckless. While this may ultimately be the result as determined by a jury, it is not necessarily so. In any event, it is for a jury which is properly instructed on the law, and not this court, to determine the facts of the case and place them into appropriate legal categories. *See Cichos,* 243 Ind. at 192, 184 N.E.2d at 3 (stating that "[t]he very purpose of the jury is to determine, after deliberation and pursuant to the court's instructions, the legal category into which the jury feels the defendant's conduct falls"). Based upon the facts presented to the jury through the testimony of the witnesses and the defendant, it is not beyond any stretch of the imagination that a jury could find that Springer was negligent in his actions. Based upon this, the giving of the instruction is supported by the evidence.[4]

The State concedes that the instruction was a correct statement of the law; there-

fore, the only issue left for our determination is whether any of the instructions which were given to the jury covered the tendered instruction. As stated earlier in the discussion of Instruction No. 2, none of the instructions which were given referred to negligence. Also, as stated before, the jury's questioning of the trial court during deliberations indicates that the jury was unclear about the definition of negligence and that there may have been some dispute among the jury about whether the State had proved that Springer's acts were reckless. Based upon this review, Springer's tendered Instruction Number 3 should have been given to the jury.

■ We finally address Springer's contention that the trial court erred in refusing to give the jury his tendered instruction on "accident." Springer's tendered Instruction Number 4 stated:

*"Accident–Defined*

In general, prohibited conduct may be excused when it is the result of an accident. This defense contains three elements:

1. The conduct must be without unlawful intent or evil design on the part of the accused;

2. The act resulting in injury must not have been an unlawful act;

3. The act must not have been done recklessly, carelessly, or in wanton disregard of the consequences.

The State has the burden of disproving this defense beyond a reasonable doubt.

---

4. We do not, as perceived by the dissent, accept "the factual contention that Springer 'stepped back and stumbled' and that 'when he stumbled, the gun fired'." Op. at 564. (Bailey, J., dissenting). We hold merely that Springer's assertion of the facts, *if accepted by the jury,* would constitute negligence in the

discharge of the firearm. Accordingly, he was entitled to an instruction upon his theory of defense. Although the conduct preceding the firing of the weapon may have been reckless, or even intentional, that characterization of Springer's conduct does not necessarily extend to the firing of the weapon.

Indiana Pattern Jury Instructions 10.19." App. at 177.

The trial court denied this instruction in part because of the view that the instruction was already "included" because it was the negative of what the State had to prove. If the State proved that Springer was reckless, then Springer's conduct was not an accident. The trial court also relied upon its belief that the instruction was confusing because "carelessly" is very much like being negligent, and therefore, the instruction seemed to imply that Springer may be guilty if he was negligent. Finally, the trial court noted that the instruction had been withdrawn from the pattern jury instructions.

While the published version of the Indiana Pattern Jury Instructions (Criminal) 10.19 (2d ed. 1991) still contains the accident instruction, the version of the instructions found on the internet at http://www.in.go v/judiciary/center/docs/crim_pat_jury_instruct_0902.pdf, which will be the third edition when published, reflects that the instruction has been withdrawn. The comments indicate that the Indiana Judges Association Criminal Instructions Committee withdrew the instruction because it could not conceive of a situation where the principles incorporated in the accident instruction would not be covered by other instructions which discussed the elements of the crime and the State's burden of proof. The comment also indicated that the Committee considered that the decision from which the accident instruction originated, *Gunn v. State*, 174 Ind.App. 26, 365 N.E.2d 1234 (1977), was based upon law which was in place prior to the adoption of the current Indiana Penal Code as revised in 1976. Since that time, the comment states that no Indiana case has considered whether the accident instruction is appropriate or how the instruction should be worded.

We agree with the trial court and the Committee that the principles established in the accident instruction are included in the instructions given defining the elements of the crime. At this point, it is necessary to draw a distinction between our reasoning regarding the accident instruction and the negligence instructions, as we previously stated that similar reasoning, while it had merit, did not preclude the giving of the negligence instructions. The key distinction is that negligence and recklessness are concepts without much distinction, especially when one has not been informed of the legal definitions of each term. To the mind of the layman, they are difficult to distinguish. However, accident is a term which a layman can quickly and reasonably understand to be different than reckless conduct. As "recklessly" is defined, there is little concern that reckless conduct could be considered to be accidental conduct.

We also note agreement with the trial court that the accident instruction as given in the Pattern Jury Instructions could be confusing. Even to those trained in the law, it is reasonable to say that "careless conduct" seems very similar to "negligent conduct." While there may very well be a distinction between an accident and negligence, neither will give rise to liability in this case. To the extent that "accident" could be considered as negligence, it is covered by the negligence instructions. To the extent that "accident" is something less than negligence, the principle behind the instruction is included the "reckless" instruction for the reasoning espoused by the trial court—if the State has not proved reckless conduct, there is no guilt upon the part of Springer whether the act was committed through an accident or negligence.

The question of whether the instruction as written was a correct statement of the law or how it should have been worded is

not one that this court must or will decide today. While in the future a situation may be presented in which an accident instruction would be appropriate, such is not the case here. Any information which could have been given through a separate accident instruction was included in the other instructions which were given. Also, Springer cannot show that his substantial rights were prejudiced by not giving such an instruction because were the jury to decide that the shooting was a result of an accident, there is no question that the jury could not find that he was reckless. The trial court did not err in refusing to give the tendered accident instruction.

Based upon the errors in refusing to instruct the jury on defendant's theory of the case that he was not reckless, but instead was negligent, we reverse and remand to the trial court for a new trial. However, as the second issue which was raised by Springer may arise upon retrial, we will also address it.

## II

### Restitution Order

■ Springer challenges the restitution order which was entered against him to the extent that it requires that he reimburse Phillip Crain's father, Daniel Crain, for the cost of airline tickets to return home from vacation following the shooting. Springer asserts that the trial court was without statutory authority to enter the challenged portion of the order. The amount of the $4,551.00 order which Springer challenges is $2,132.00.

In *Roach v. State*, 711 N.E.2d 1237 (Ind. 1999), our Supreme Court addressed whether a restitution order could include reimbursement for expenses which were not itemized in Ind.Code § 35–50–5–3 (Burns Code Ed. Supp.1994), the restitution order statute. In that case, the Court was reviewing a prior version of the restitution statute which authorized restitution orders for property damage, medical and hospital costs, and lost earnings. The Court determined that because funeral and burial expenses were not included within the plain and ordinary meaning of the statute, and because the legislature had amended the statute to include restitution for funeral and burial expenses after the restitution order was entered, the defendant could not be ordered to pay restitution for those expenses. *Roach*, 711 N.E.2d at 1238.

Indiana Code § 35–50–5–3 (Burns Code Ed. Repl.1998), authorizes a trial court to enter a restitution order based upon a consideration of:

> "(1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate);
>
> (2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime;
>
> (3) earnings lost by the victim (before the date of sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime; and
>
> (4) funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime."

None of these four categories includes any language which could be construed to authorize a trial court to include in a restitution order a reimbursement to an individual for airline travel as a result of returning home following the commission of a crime at one's residence. Because the General Assembly has not authorized the trial court to include such in its restitution order, the trial court erred in requiring Springer to reimburse Daniel Crain for the cost of the airline tickets.

### Conclusion

The trial court erred in refusing to give Springer's tendered instructions on negligence to the jury. The tendered instructions were correct statements of the law, were based upon the evidence, the material in the tendered instructions was not covered by any other instructions, and Springer's substantial rights were most likely prejudiced by the failure to give the instructions. Following retrial, should Springer be found guilty, the trial court is to refrain from including any costs for the airline tickets in a restitution order.

We reverse and remand for proceedings not inconsistent with this opinion.

MATHIAS, J., concurs.

BAILEY, J., dissents with opinion.

Judge BAILEY, dissenting.

I respectfully dissent from the majority's determination that the trial court erred in refusing to give Springer's tendered instructions on negligence to the jury. This is not a case about negligence. Negligence law presupposes that an individual is engaged in lawful conduct which *can* be undertaken with due care for the safety of another person. The cases relied upon by the majority, *Sipp,* 514 N.E.2d at 330 and *Cichos,* 184 N.E.2d at 1, involve such conduct, that of operating a motor vehicle. The mere negligent operation of a motor vehicle does not render one operating it criminally liable should harm ensue. *Id.* at 3.

Here, in contrast, Springer was engaged in conduct that he had no legal right to engage in; specifically, entering another's home in a confrontational manner, holding an unlicensed weapon, which he admitted was "locked and cocked" with "one in the chamber." (Tr. 386.) Springer was in a course of criminal conduct from the moment he demanded entry to another's home, armed and on a mission to intimidate the person he believed to be responsible for the beating of his son. Had the course of conduct ended with the victim fatally wounded, Springer would properly have been tried on a charge of felony murder.

The majority accepts as uncontroverted the factual contention that Springer "stepped back and stumbled" while holding the gun and that "when he stumbled, the gun fired." Op. at 557. However, these were claims made by Springer and contested by the State, which presented evidence that the trajectory of the bullet was consistent with the deliberate firing of a warning shot into a wall. The State also presented evidence that the gun had a safety mechanism and was not defective, and that deliberate pressure on the trigger was required for firing. However, even assuming that Springer stumbled once inside the house, upon failing to exercise due care to avoid tripping, this does not render all his foregoing conduct merely negligent.

Considering either Springer's version—that he took a "locked and cocked" gun into a residence and thereafter stumbled—or the State's version—that he took his gun into a residence and fired a warning shot while demanding to know the whereabouts of his son's attacker—the discharge could not be lawful. Springer had no right to be in the residence; he was not acting in defense of a person or property; he had no excuse or justification for his actions recognized by law and did not suffer from diminished capacity. The illicit activities that had taken place in the residence, as well as the illegal conduct directed toward Springer's son, had already terminated before Springer appeared. Springer elected not to summon police, but to seek retribution on his own. To allow negligence instructions under such circumstances would be tantamount to accepting vigilante jus-

tice without an imminent threat to person or property.

Moreover, assuming that an instruction including language that "This requires the State to prove more than mere negligence on the behalf of the Accused," App. at 175, is relevant to an issue before the jury, the jury would not have been adequately apprised of negligence law by the instructions tendered. The tendered instructions omit a definition of "reasonable and ordinary care" for obvious reasons—there is no definition of reasonable and ordinary care that encompasses the circumstance of an uninvited person seeking confrontation in the occupied residence of another person, while wielding a loaded, cocked weapon without the safety mechanism engaged. Ultimately, Springer may argue a particular version of the facts in support of his theory of the case. However, under the circumstances of this case, he is not entitled to have the support of the law to further his theory.

Finally, error in failing to give an instruction does not warrant reversal absent prejudice to the defendant. *Bragg v. State*, 695 N.E.2d 179, 180 (Ind.Ct.App. 1998). Springer was not prejudiced by the omission of negligence instructions. The jury could not have found Springer negligent under either factual scenario presented.

I would affirm the refusal of the negligence instructions. In all other respects, I concur with the majority.