Steven S. SPRINGER, Jr., Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 31S01–0302–CR–89.

Supreme Court of Indiana.

Nov. 6, 2003.

Matthew Jon McGovern, Louisville, KY,
for Appellant.

Steve Carter, Attorney General of
Indiana, Michael Gene Worden, Deputy
Attorney General, Indianapolis, for Appel-
lee.

SULLIVAN, Justice.

When the son of Defendant Steven S. Springer, Jr., tried to crash a party at a private residence, the host beat him up. Defendant responded by taking a loaded and cocked handgun to the residence. The weapon discharged and a boy was injured. The Court of Appeals reversed Defendant's conviction for criminal recklessness on the ground that the jury had not been instructed to acquit Defendant if it found him to be negligent rather than reckless. We find that there was no requirement that the jury be so instructed.

## Background

The facts indicate that on the night of November 5, 1999, Phillip Crain, eighteen years of age, engaged in some risky business while his parents were on vacation in Aruba. Although Phillip's parents had forbidden him from having any friends over while they were gone, he threw a party at his parents' home that about 40 to 50 teenagers attended. There was some alcohol consumption at the party and the services of an adult entertainer were procured.

Defendant's son, who had not been invited, crashed the party at some point during the evening. Phillip told him to leave about three times but Defendant's son did not. Ultimately, Phillip attacked Defendant's son and kicked him for about five or ten minutes. After the fight, at approximately one or two in the morning of November 6, Defendant's son left the party and drove home. His head and body were badly bruised and swollen.

Upon returning home, Defendant's son fell asleep without telling his parents about the events at the party and without contacting the police. At about eight o'clock in the morning of November 6, Defendant Steven Springer, Jr., and his wife learned that their son had suffered a beating the previous night. Defendant became very

angry about what had happened and decided to confront the individuals responsible for the beating. He grabbed his unregistered .45 caliber semi-automatic handgun and drove with his wife to the Crains' home. He had not obtained any medical aid for his son at that time, nor had he notified the police about the beating.

When he arrived at the Crains' home, he loaded a bullet into the chamber of his gun before approaching. Defendant banged on the door and demanded to be let inside. One of the boys opened the door and Defendant asked if he was Phillip Crain. Another of the boys, Benjamin Waldo, ran to the basement when he saw Defendant approaching the house with a gun. Defendant heard shuffling behind the basement door and headed towards it. Benjamin heard Defendant cursing and yelling for Phillip as well as the sound of drums being kicked.

While this was going on, Jonathan Wendell was washing his face in the bathroom. Jonathan heard a commotion in the house and then was shot in the chest. The bullet that injured Jonathan traveled from Defendant's gun, through a refrigerator in the kitchen, through the back wall, and into the bathroom.

After he was shot, Jonathan fell to his knees. Jonathan gathered himself and then walked to the kitchen and asked Defendant what he was doing. Defendant asked Jonathan if he was Phillip Crain. Defendant replied that he was not and Defendant took him to the hospital. Jonathan received medical treatment, but the bullet remains in his lung because of the medical risk of removal.

The State charged Defendant with Criminal Recklessness, a Class C felony. At trial, Defendant admitted that he carried the gun into the house with a bullet in the chamber and the hammer back but

claimed that the safety was on. He claimed that his weapon fired accidentally when he stumbled as a result of jerking open the basement door. The State presented evidence showing that Defendant's gun had several working safeties and that the firearm could not have discharged accidentally.

Defendant tendered instructions on the definition of negligence, definition of recklessness, and the defense of accident to the trial court. The trial court rejected each of these instructions over Defendant's objection.

The jury found Defendant guilty of Criminal Recklessness.

At sentencing, Phillip's father was granted restitution for property damage to his residence as well as the cost of his airline tickets back home from vacation following the shooting. Defendant was sentenced to seven years incarceration with two of those years suspended.

The Court of Appeals reversed the conviction. Although it found that the trial court properly rejected Defendant's tendered instruction on his accident defense, the Court of Appeals concluded that the trial court erred in refusing to give Defendant's tendered instructions on negligence. *Springer v. State,* 779 N.E.2d 555, 562–63, 564 (Ind.Ct.App.2002). It also determined that the trial court improperly granted restitution for the cost of airline tickets home from vacation. *Id.* at 563. Judge Bailey dissented from the finding that the trial court abused its discretion in rejecting the tendered instructions involving negligence. *Id.* at 564–65. We granted transfer. *Springer v. State,* 792 N.E.2d 39 (Ind.2003).

## Discussion

### I

Defendant maintains that the trial court abused its discretion by refusing his ten-dered instruction no. 2 defining "recklessly" and tendered instruction no. 3 defining "negligence."

■ "This Court reviews a trial court's refusal to give a tendered instruction for an abuse of discretion. We consider (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given." *Forte v. State,* 759 N.E.2d 206, 209 (Ind.2001) (citations omitted).

■ The trial court gave the jury an instruction defining "recklessly." In relevant part, final jury instruction no. 5 read: "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." (Appellant's App. at 186.)

Defendant proffered two instructions as an alternative to the court's. The key factor distinguishing Defendant's proposed instructions from the trial court's final instruction was their emphasis on negligence.

Defendant's tendered instruction no. 2 also defined "recklessly." It read: "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious and unjustified disregard of the harm that might result therefrom, and the disregard involves a substantial deviation from acceptable standards of conduct. This requires the State to prove more than mere negligence on the behalf of the Accused." (Appellant's App. at 175.)

Defendant's tendered instruction no. 3 defined "negligence." It said: "Negligence is the failure to do what a reasonably careful and prudent person would

have done under the same or like circumstances, or the doing of some thing which a reasonably careful and prudent person would not have done under the same or like circumstances; in other words, negligence is the failure to exercise reasonable or ordinary care." (Appellant's App. at 176.)

Defendant claims that his tendered instruction no. 2 should have been used because the trial court's instruction was an incorrect statement of the law. Defendant suggests that "the Indiana Court of Appeals has repeatedly held that the state must prove recklessness as opposed to mere negligence," and he suggests that his instruction defining "recklessly" more accurately states the law because it reminds the jury that recklessness is graver than negligence. (Br. of Appellant at 10.)

The instruction given by the trial court defined recklessly in terms *almost* identical to Defendant's proposal. Indeed, the trial court's instruction closely tracks the statutory definition of recklessness.[1] In its review of the matter, the Court of Appeals found that "it is undisputable that the definition of 'recklessly' itself was adequately covered" by the trial court's instruction. *Springer*, 779 N.E.2d at 560. We agree that the trial court's instruction defining "recklessly" correctly stated the law.

■ Defendant also claims that *both* of his instructions should have been given because none of the trial court's jury instructions explained the difference between recklessness and negligence and, therefore, the substance of his tendered instructions nos. 2 and 3 was not covered by other instructions that were given. He points out that "nowhere in the trial

court's final instructions was the word 'negligence' even mentioned." (Br. of Appellant at 12.) A direct result, Defendant maintains, is that the trial court effectively prohibited the jury from hearing any instruction on any theory of his defense.

To this point, the trial court noted that the State had to prove that Defendant "intentionally, knowingly or recklessly" acted, not that he "negligent[ly] discharged a firearm." (R. at 437.) The trial court commented that if the jury found that the State had not met its burden of proof, it would have to acquit the Defendant.

The Court of Appeals disagreed with the trial court. It held that Defendant's "substantial rights were most likely prejudiced by the failure of the trial court to explain the legal concept of negligence." *Springer*, 779 N.E.2d at 560. In significant part, the Court of Appeals relied on *Cichos v. State*, 243 Ind. 187, 184 N.E.2d 1 (1962), and *Sipp v. State*, 514 N.E.2d 330 (Ind.Ct. App.1987), for this conclusion.

In *Cichos*, the defendant was convicted of reckless homicide after he was involved in a head-on collision. 243 Ind. at 188–90, 184 N.E.2d at 1–2. He claimed that the trial court abused its discretion by failing to give his tendered instructions, some of which explained negligence. *Id.* at 189–91, 184 N.E.2d at 2–3. This Court found that, in the context of a reckless homicide charge in an automobile accident, the failure to give the instructions constituted an abuse of discretion because the substance of the instructions was not covered by any others given. *Id.* at 191–92, 184 N.E.2d at 3.

*Sipp* involved a similar claim arising from an automobile accident. Relying on

---

1. Ind.Code § 35–41–2–2(c) (1998) ("A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjust-ifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.").

*Cichos,* the Court of Appeals found an abuse of discretion when the trial court failed to give instructions that it viewed as substantively the same as those tendered in *Cichos. See Sipp,* 514 N.E.2d at 331–32.

On transfer, the State argues that it was not error for the trial court to deny the instructions because negligence was simply not an available defense. (Br. of Appellee at 6.) In his dissent, Judge Bailey also took this position. He argued that "[n]egligence law presupposes that an individual is engaged in lawful conduct which *can* be undertaken with due care for the safety of another person" but that Defendant's actions were those of a vigilante seeking "retribution on his own." *Springer,* 779 N.E.2d at 564–65.

Viewed in totality, the facts support Judge Bailey's analysis.

On the morning of November 6, 1999, Defendant learned that his son had been involved in a physical altercation at the Crains' home the previous night after he tried to attend a party to which he had not been invited. In a state of anger, Defendant grabbed his unlicensed firearm and he and his wife drove to the Crains' home. Defendant did not take a moment to notify the police that his son had been in a fight, nor did he obtain medical aid for his son. At the Crains' home, Defendant loaded a bullet into his gun—later admitting that it was "locked and cocked" with "one in the chamber." (R. at 383, 386.) Still angry, he proceeded to bang on the door demanding entry and when he gained entry, he demanded to know the whereabouts of Phillip Crain, whom he believed had beaten his son the night before. In the midst of this activity, Defendant's gun fired and a bullet became lodged in Jonathan Wendell's lung, where it remains to this day.

At trial, evidence was presented showing that Defendant's gun had several working safeties and that the gun could not have discharged accidentally. The State maintains that Defendant intentionally fired a warning shot but Defendant maintains that the firing was an accident.

Under these facts, we are unable to say that the trial court abused its discretion by denying an instruction on negligence. Negligence, as used by Defendant here, is an argument not a legal defense. Defendant's legal defense was and is that he is not guilty of criminal recklessness because his actions did not meet the legal requirements of recklessness. The jury was properly instructed that the State was required to prove beyond a reasonable doubt that Defendant had acted "in plain, conscious and unjustified disregard of the harm that might result therefrom, and the disregard involve[d] a substantial deviation from acceptable standards of conduct." Defendant was free to and did argue that he did no more than fail "to exercise reasonable or ordinary care." As the trial court accurately observed, Defendant's negligence argument is simply a statement that State failed to prove that he was reckless. No additional instruction to the jury on this point was required.

Another factor pointing away from a finding of an abuse of discretion on the trial court's part is that no reasonable interpretation of the facts suggests that Defendant's conduct was merely negligent, that he merely failed to exercise reasonable or ordinary care. As Judge Bailey pointed out, "there is no definition of reasonable and ordinary care that encompasses the circumstance of an uninvited person seeking confrontation in the occupied residence of another person, while wielding a loaded, cocked weapon without the safety mechanism engaged." *Springer,* 779 N.E.2d at 565. From the very beginning, Defendant engaged in conduct in which he had no right to engage and which, when viewed in its best light, indicates an intent to intimidate. "While the criminal code is

willing to excuse the use of force in certain circumstances to protect against certain unlawful activity, it does not countenance and will not sanction premeditated retaliation for past violence." *Henson v. State*, 786 N.E.2d 274, 278 (Ind.2003).

While the jury had the responsibility of determining whether Defendant's conduct was reckless, there was no legal question of negligence at stake. In this respect, the factual circumstances of this case distinguish it from *Cichos* and *Sipp*. Both of those cases involved conduct that *can* be undertaken with due care—the conduct of driving a motor vehicle. *See Cichos*, 243 Ind. at 189–90, 184 N.E.2d at 3, *Sipp*, 514 N.E.2d at 330.

## II

■ Defendant also claims that the trial court abused its discretion by refusing his tendered instruction no. 4 on the defense of accident. The proposed instruction reads:

> In general, prohibited conduct may be excused when it is the result of an accident. This defense contains three elements: (1) The conduct must be without unlawful intent or evil design on the part of the accused; (2) The act resulting in injury must not have been an unlawful act; (3) The act must not have been done recklessly, carelessly, or in wanton disregard of the consequences. The State has the burden of disproving this defense beyond a reasonable doubt.

(Appellant's App. at 177.)

The Court of Appeals found that it was not error to deny the accident instruction

because Defendant "cannot show that his substantial rights were prejudiced by not giving such an instruction." *Springer*, 779 N.E.2d at 563. It reasoned that "were the jury to decide that the shooting was a result of an accident, there is no question that the jury could not find that he was reckless." *Id.* We adopt the opinion of the Court of Appeals on this point.

## III

■ Finally, Defendant challenges the restitution order entered against him to the extent that it requires him to reimburse Phillip Crain's father for the cost of airline tickets to return home from vacation as a result of the shooting. (Br. of Appellant at 20–22.)

Relying on our holding in *Roach v. State*, 711 N.E.2d 1237 (Ind.1999), and the text of Ind.Code § 35-50-5-3 (1998),[2] the Court of Appeals found that the trial court erred in requiring Defendant to reimburse for the costs of the airline tickets. *Springer*, 779 N.E.2d at 563. It reasoned the General Assembly has not authorized the trial court to include this expense in its restitution order because none of the statutory restitution categories includes any language that could be construed to authorize it. *Id.*

We summarily affirm the opinion of the Court of Appeals on this point.

### Conclusion

Having previously granted transfer pursuant to Ind. Appellate Rule 58(A), we

---

2. In relevant part, it states:

"The court shall base its restitution order upon a consideration of: (1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate); (2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime; (3) earnings lost by the victim (before the date of sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime; and (4) funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime."

adopt the portion of the opinion of the Court of Appeals affirming the trial court's rejection of Defendant's tendered instruction no. 4 and summarily affirm the portion reversing the trial court's grant of restitution for airplane tickets. We find that the trial court did not abuse its discretion in rejecting Defendant's tendered instructions nos. 2 and 3 and therefore affirm the judgment of conviction of Criminal Recklessness.

SHEPARD, C.J., and BOEHM, J., concur.

DICKSON, Justice, dissenting.

The Court concludes that no additional instruction was required regarding negligence and that "no reasonable interpretation of the facts suggests that Defendant's conduct was merely negligent." Op. at 435. I respectfully dissent, believing, as did the Court of Appeals, that the trial court erred in refusing to give the defendant's tendered instructions defining "recklessly" and "negligence."

The charging information alleged that criminal recklessness occurred when the defendant "discharged a .45 caliber handgun causing the bullet/projectile to enter the chest of Jonathan Windell" (R. at 14). It did not charge that the defendant was reckless by entering a dwelling full of people with a loaded, cocked handgun. In defense, the defendant claimed that the gun discharged as a result of an accident, or at the most negligence, and that his conduct did not rise to the level of recklessness. He testified at trial that, because the occupants of the house had baseball bats, he took the gun with him for self-defense, he believed that the safety was on, and he carried the gun in his nondominant hand because he had no intention of using it. He stated that, after entering the house, he heard shuffling behind the door leading to the basement and, because he didn't know who was on the other side, he opened the door and stepped back for his own protection. As he did so, he stumbled backwards, and accidentally discharged the weapon. He insisted that at no time did he point the weapon at anyone, but kept it down by his side. The bullet passed through a refrigerator and a wall, ultimately injuring a third party in another room.

A defendant in a criminal case is entitled to have the jury instructed on any theory of defense that has some probative foundation in the evidence, however weak and inconsistent. *Wilson v. State,* 268 Ind. 112, 117, 374 N.E.2d 45, 48 (1978); *Hedrick v. State,* 229 Ind. 381, 389, 98 N.E.2d 906, 910 (1951); *Taylor v. State,* 629 N.E.2d 852, 855 (Ind.Ct.App.1994); *Dayhuff v. State,* 545 N.E.2d 1100, 1102 (Ind. Ct.App.1989).

Although negligence is technically not a defense to criminal recklessness, prior Indiana decisions have often emphasized that to prove recklessness, the State must prove that a defendant acted recklessly and not merely negligently. *See, e.g., Beeman v. State,* 232 Ind. 683, 690, 115 N.E.2d 919, 921 (1953); *Warner v. State,* 577 N.E.2d 267, 269 (Ind.Ct.App.1991); *Young v. State,* 161 Ind.App. 532, 546, 316 N.E.2d 435, 443 (1974); *Coconower v. Stoddard,* 96 Ind.App. 287, 293, 182 N.E. 466, 469 (1932).

In *Cichos v. State,* 243 Ind. 187, 184 N.E.2d 1 (1962), this Court found that the trial court committed reversible error in refusing to give tendered negligence instructions in a reckless homicide case. The Court stated:

Whether the evidence in this case establishes that the deaths alleged in the indictment occurred from a mere accident, *from negligent conduct* or from willful and/or wanton misconduct so as

to amount to recklessness, is dependent on the weight given the various aspects of the case and the evidence by the jury. The very purpose of the jury is to determine, after deliberation and pursuant to the court's instructions, the legal category into which the jury feels the defendant's conduct falls. The appellant's theory of the evidence and the law establishing such theory was never given to the jury in any instructions.

*Id.* at 192, 184 N.E.2d at 3. (emphasis added). Relying on *Cichos*, the Court of Appeals in *Sipp v. State*, 514 N.E.2d 330 (Ind.Ct.App.1987), found that the trial court erred in refusing to give a tendered negligence instruction in a reckless homicide case. Judge Garrard explained in his concurring opinion:

> [T]he court's refusal to give instructions as to what does not constitute recklessness is not rendered harmless because of the instruction given as to what would constitute recklessness. Indeed, I have no quarrel with holding that in cases where the understanding of a particular term is crucial, the court may not refuse a correctly drawn instruction that serves to amplify the definition by insuring that the jury understand the difference between the crucial conduct and some closely similar conduct. The purpose of the instructions is to fairly advise the jury on the law applicable to the case.

*Id.* at 332. Similarly, in *Rickner v. Haller*, 124 Ind.App. 369, 379, 116 N.E.2d 525, 530 (Ind.Ct.App.1954) the Court of Appeals stated:

> In this case, the fact of wanton or willful misconduct is in issue. Appellant was, therefore, entitled to instructions which defined and distinguished such conduct from ordinary negligence. This rule has been stated as follows: "Where the question of 'willfulness,' 'wantonness,' and 'recklessness' are in issue, those

terms should be defined and distinguished from 'ordinary negligence.' "

*Id.* at 530 (quoting 65 C.J.S., Negligence, § 289c).

For the defendant to have a fair opportunity to present his defense, it was crucial that the jury understand the difference between negligence and recklessness. Distinguishing between reckless and negligent conduct is not an easy task, and "even those trained in the legal profession have grappled with abstract notions regarding degrees of culpability." *Taylor v. State*, 457 N.E.2d 594, 599 (Ind.Ct.App.1983). In the present case, the jury expressed a similar concern. During deliberations, it sent a note to the judge requesting the legal definition of negligence, but none was provided by the court.

I believe that the defendant's tendered instructions were correct statements of law, were based upon the evidence, were not adequately covered by any other instructions, and were necessary to enable the jury fairly to consider the defendant's theory of defense. Because the trial court refused these instructions, I would reverse and remand for a new trial.

RUCKER, J., concurs.