FILED

Oct 31 2019, 7:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

R. Thomas Lowe
Lowe Law Office
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Leslie Michelle New, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 31, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-575 <br><br> Appeal from the Orange Circuit Court <br><br> The Honorable Steven L. Owen, Judge <br><br> Trial Court Cause No. <br> 59C01-1509-F5-854 |

**Crone, Judge.**

# Case Summary

[1] Leslie Michelle New appeals her convictions, following a jury trial, for level 5 felony criminal recklessness and class B misdemeanor resisting law enforcement. She asserts that the trial court abused its discretion in refusing to give one of her tendered jury instructions, and that her substantial rights were prejudiced as a result. She also asserts that the State presented insufficient evidence to support her convictions. We agree with New that the trial court abused its discretion in instructing the jury and that her substantial rights were prejudiced as to her criminal recklessness conviction. Accordingly, we reverse that conviction and remand for a new trial. We find that the State presented sufficient evidence to support New's conviction for resisting law enforcement, so we affirm that conviction.

# Facts and Procedural History

[2] In the summer of 2015, New's five-year-old autistic daughter, M.N., began residing on a permanent basis with New's aunt and uncle, Barbara and Joe New, in their double-wide mobile home located on sixty-one acres of property in Paoli. Barbara and Joe had been close with M.N. since her birth and were willing to help New because she "was having a tough time." Tr. Vol. 3 at 86. New granted Barbara and Joe a power of attorney so that they could make decisions on M.N.'s behalf. During that summer, New did not visit her daughter much. When it was time to enroll M.N. in kindergarten that fall, New entered into a third-party custody agreement with Barbara and Joe so that they could enroll M.N. in school.

[3]     On Monday, September 14, 2015, New showed up unannounced to Barbara and Joe's house around 3:15 p.m. After New visited with M.N. for approximately one hour, Barbara informed New that M.N. was scheduled for her first gymnastics class at 5:00 p.m. Barbara had signed up for the gymnastics class to help M.N. socialize. The women began arguing after Barbara refused to tell New the location of the class because Barbara did not want New to come to the class and "cause problems." *Id.* at 103. New grabbed M.N.'s hand, led her to her vehicle, and placed the child in the front passenger seat. Barbara followed, asking New what she was doing, and telling her that M.N. had school the next morning. Barbara attempted to unbuckle the seatbelt and remove M.N. from the vehicle. Barbara was unable to get M.N. unbuckled and out of the vehicle, so she told New that she was going to call the police. Barbara closed the passenger door of the vehicle and walked around the back of the vehicle while dialing 911. Barbara stood behind the vehicle as Joe came outside and walked to the driver's-side door, trying to block New from entering the vehicle. Joe grabbed New's car keys out of her hand and yelled to Barbara that he had the keys. Still standing directly behind the vehicle, Barbara yelled back that New had another set of keys and that she could see that New was looking through her purse for the extra set.

[4]     New located her extra set of keys, got in the vehicle, locked the door, and started the engine. New put the vehicle in reverse and backed up, bumping into Barbara and knocking her to the ground. Barbara screamed, and New then pulled the vehicle forward, "circled through the yard[,]" and drove away. *Id.* at

110. Barbara, who was still on the phone, told the 911 dispatcher that New had struck her with a vehicle and driven away.

[5] Orange County Sheriff's Department officers responded to Barbara's call that "started out as a domestic issue over a child … and then at some point … changed and … became a hit and run." *Id*. at 240. As Chief Deputy Dennis Lanham was traveling to the scene, he observed a vehicle matching the description of New's vehicle driving in the opposite direction. Deputy Lanham initiated a traffic stop. When Deputy Lanham approached the vehicle, he noticed that New was driving the vehicle and that M.N. was in the front passenger seat. Deputy Lanham thought New behaved oddly because she "kind of just stared" at him and then asked him for his police credentials even though he had identified himself, was in full uniform, and was driving a marked police vehicle. *Id*. at 244. Deputy Lanham asked New several times to exit the vehicle so that he could speak to her about the incident with Barbara, but New just continued to stare at him. Deputy Lanham informed New that he was going to have to remove her from the vehicle. Once Deputy Lanham opened the driver's-side door, New finally complied and stepped out of the vehicle.

[6] Deputy Lanham walked with New to the rear of her vehicle. New began stating that she could "fix this" and wanted to "go back" to Barbara and Joe's house to "straighten this out." *Id*. at 248-49. New then turned around and started walking back toward the driver's door. Deputy Lanham "got her by the arm, turned her back around and … started back around the vehicle again." *Id*. at 249. New pulled away from Deputy Lanham and tried to walk back toward

the driver's door again. This "occurred three times" before Deputy Lanham "finally grabbed [New] by both shoulders, held her firmly against the vehicle and said, [']look, this has got to stop. ... I can't have you going back to the car.[']" *Id*. at 249. New seemed to understand and "be okay[,]" but as soon as Deputy Lanham relaxed his grip, "she attempted to go get in the car" a fourth time. *Id*. at 250. Deputy Lanham decided "there was no more talking to her and convincing her to comply," so he turned New around to put her in handcuffs. *Id*. New, who was "fairly strong[] for a small woman[,]" resisted and struggled with Deputy Lanham as he attempted to place the handcuffs on her. *Id*. Another officer who had arrived at the scene had to help Deputy Lanham secure New. Deputy Lanham arrested New for resisting law enforcement, and she was transported to jail.

[7] The State subsequently charged New with level 5 felony battery by means of a deadly weapon, class B misdemeanor criminal recklessness, and class A misdemeanor resisting law enforcement. Following a three-day trial, the jury found New guilty of criminal recklessness and resisting law enforcement, but not guilty of battery by means of a deadly weapon. The trial court imposed consecutive sentences of 180 days, with eighty-two days executed and ninety-eight days suspended, with credit for eighty-two days previously served, on the criminal recklessness count, and 365 days, fully suspended, on the resisting law enforcement count. This appeal ensued.

# Discussion and Decision

## Section 1 – The trial court abused its discretion in refusing to give New's tendered jury instruction regarding negligence.

[8] Because we find it dispositive to our resolution of New's appeal as it pertains to her criminal recklessness conviction, we first address her challenge to the trial court's instruction of the jury. Specifically, New asserts that the trial court abused its discretion in refusing to give her proposed instruction regarding the definition of negligence as it related to the criminal recklessness charge. The trial court has broad discretion in instructing the jury, and as a result, we review the trial court's decision to give or refuse a party's tendered instruction for an abuse of discretion. *Kane v. State*, 976 N.E.2d 1228, 1231 (Ind. 2012). On review, we consider "(1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and, (3) whether the substance of the instruction was covered by other instructions that were given." *Id*. at 1230-31 (citation omitted). However, even if the refusal to give a tendered jury instruction was error, this Court must assess whether the defendant was prejudiced by the trial court's failure to give the instruction. *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015).

[9] To convict New of class B misdemeanor criminal recklessness, the State was required to prove beyond a reasonable doubt that New recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to another person. *See* Ind. Code § 35-42-2-2(a). The State's theory here was that New behaved recklessly when she backed her vehicle into Barbara. "A person

engages in conduct 'recklessly' if [s]he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35-41-2-2(c).

[10] Regarding final jury instructions, New requested that, in addition to being instructed on the definitions of recklessly, knowingly, and intentionally, the jury be given an instruction defining negligence and distinguishing between negligence and recklessness. Specifically, New's counsel proposed that the jury be given an instruction that:

> in addition to defining recklessly it says uh, this requires the State to prove more than mere negligence on the part of the defendant because a person may be negligent but not, but may not have acted recklessly. Negligence is the failure to do what a reasonably careful and prudent person would do under the same or similar [c]ircumstances or the doing of something that a reasonably careful and prudent person would not do under the same or similar [c]ircumstances. In other words negligence is the failure to exercise reasonable or ordinary care. If you find that the defendant only acted negligently but not recklessly you must find the defendant not guilty.

Tr. Vol. 4 at 65. The trial court denied counsel's request, concluding that the pattern jury instructions on the three applicable levels of culpability for criminal recklessness were sufficient. The court determined that adding an instruction regarding negligence could confuse the jury because "I don't want the jury thinking that there's a negligence culpability that's available … either [the State] met [its] burden [on one of the three applicable levels] or [it] didn't." *Id.* at 66.

[11] In support of her argument that the trial court's decision constituted an abuse of discretion as well as reversible error, New directs our attention to the fact that in at least two instances, Indiana appellate courts have reversed reckless homicide convictions based on incidents involving the operation of a motor vehicle where the trial court failed to give the defendant's proposed jury instructions regarding negligence. *Cichos v. State*, 243 Ind. 187, 184 N.E.2d 1 (1962); *Sipp v. State*, 514 N.E.2d 330 (Ind. Ct. App. 1987).[1] In *Cichos*, the appellant was charged with reckless homicide and involuntary manslaughter following an accident in which his vehicle hit another vehicle head-on, resulting in the death of two occupants in the other vehicle. The trial court refused to give the appellant's tendered instructions stating that mere negligence could not give rise to criminal liability for the crimes of reckless homicide or involuntary manslaughter. Our supreme court determined that the failure to give the instructions amounted to reversible error and stated:

> Whether the evidence in this case establishes that the deaths alleged in the indictment occurred from a mere accident, from negligent conduct or from willful and/or wanton misconduct so as to amount to recklessness, is dependent on the weight given the various aspects of the case and the evidence by the jury. The very purpose of the jury is to determine, after deliberation and pursuant to the court's instructions, the legal category into which the jury feels the defendant's conduct falls. The appellant's theory of the evidence and the law establishing such theory was never given to the jury in any instructions.

---

[1] We note that although these cases involved convictions for reckless homicide rather than criminal recklessness, the "reckless" mens rea is the same.

*Cichos*, 243 Ind. at 192, 184 N.E.2d at 3.

[12] In *Sipp*, the defendant, who was operating his vehicle in excess of fifty miles per hour, sideswiped two cars stopped at a traffic light before hitting a third car that was also stopped at the traffic light. The driver of the third car died as a result of the accident. The defendant claimed that he suffered from epileptic seizures and could not remember the accident. He tendered instructions stating that he could not be found guilty if he was merely negligent in operating his vehicle or if his lack of attention or error in judgment caused the collision. Citing *Cichos*, the *Sipp* court agreed that the instructions should have been given to the jury and reversed the conviction. *Sipp*, 514 N.E.2d at 332.

[13] More recently, in *Springer v. State*, 798 N.E.2d 431 (Ind. 2003), our supreme court noted that, as a general matter, negligence is an argument and not a legal defense to criminal recklessness. *Id.* at 435. In other words, a defendant's "negligence argument is simply a statement that [the] State failed to prove that he was reckless," and so long as the jury is properly instructed on the definition of the reckless mens rea, no additional instruction is required. *Id.* However, the court approved of the rationale in *Cichos* and *Sipp* and acknowledged that such additional instruction regarding negligence may very well be required in cases where there is a legal question of negligence at stake, such as in those cases involving "conduct that *can* be undertaken with due care—the conduct of driving a motor vehicle." *Id.* at 436 (citing *Cichos*, 243 Ind. at 189-90, 184 N.E.2d at 3; *Sipp*, 514 N.E.2d at 330).

[14] We are convinced that this is a case where there is a legal question of negligence at stake, as New was engaged in conduct that can be undertaken with due care, namely operating a motor vehicle. The main theory of New's defense was that she backed her vehicle into Barbara completely on accident. It is well settled that "[a] criminal defendant is entitled to have a jury instruction on 'any theory or defense which has some foundation in the evidence.'" *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015) (quoting *Toops v. State*, 643 N.E.2d 387, 389 (Ind. Ct. App. 1994)). New's claim that she was only negligent was at least a theory, with some foundation in the evidence, that could have led to her acquittal, and therefore she was entitled to have a jury instruction explaining that theory. Contrary to the State's assertion, simply allowing New's counsel to argue that what she did was negligent rather than reckless was an inadequate substitute for an instruction from the trial court explaining the concept. Understanding the difference between reckless and negligent conduct is not an easy task, and "even those trained in the legal profession have grappled with abstract notions regarding degrees of culpability." *Taylor v. State*, 457 N.E.2d 594, 599 (Ind. Ct. App.1983).

[15] Under the circumstances presented, we conclude that New's proposed instruction was a correct statement of law, was based upon the evidence, was not covered by other instructions, and was necessary to enable the jury to fairly consider New's theory or defense. As such, New's substantial rights were prejudiced by the trial court's failure to give the instruction. Therefore, we

reverse New's criminal recklessness conviction and remand for a new trial as to that charge.[2]

## Section 2 – The State presented sufficient evidence to support New's conviction for resisting law enforcement.

[16] We next address New's claim that the State presented insufficient evidence to support her conviction for resisting law enforcement. Sufficiency of the evidence claims "face a steep standard of review." *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id*. Reversal is appropriate only when reasonable persons would be unable to form inferences as to each material element of the offense. *McCray v. State*, 850 N.E.2d 998, 1000 (Ind. Ct. App. 2006), *trans. denied*.

[17] To convict New of class A misdemeanor resisting law enforcement, the State was required to prove beyond a reasonable doubt that Hill knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer or a person assisting the officer while the officer was lawfully engaged in

[2] As stated above, the instructional error is dispositive of our consideration of New's criminal recklessness conviction. Thus, we need not address her challenge to the sufficiency of the evidence regarding that charge.

the execution of the officer's duties.  Ind. Code § 35-44.1-3-1(a)(1).  New concedes that Deputy Lanham was lawfully engaged in the execution of his duties as a law enforcement officer.  She claims only that the State failed to prove that she "forcibly" resisted Deputy Lanham in the execution of those duties.

[18]     A person forcibly resists a police officer when she uses strong, powerful, violent means to impede an officer in the lawful execution of his duties. *Walker v. State*, 998 N.E.2d 724, 726-27 (Ind. 2013).  An overwhelming or extreme level of force is not required; rather, forcible resistance may be satisfied with even a modest exertion of strength, power, or violence. *Id*. at 727.  Deputy Lanham testified that after he was finally able to get New to comply with his request to exit her vehicle, she repeatedly disregarded his attempts to lead her to the rear of the vehicle, each time pulling away from his grip to try to get back to the driver's door.  At one point, Deputy Lanham had to grab New by the shoulders to try to prevent her from yet again ignoring his commands. After she maneuvered away a third time, Deputy Lanham attempted to put handcuffs on New, but New began struggling to an extent that another officer had to step in to assist.  Deputy Lanham described New as being "fairly strong for a small woman resisting being placed in handcuffs."  Tr. Vol. 3 at 250. The jury could reasonably infer from this evidence that New engaged in at least a modest exertion of strength to impede Deputy Lanham in the execution of his duties as a police officer.  The State presented sufficient evidence to support New's

conviction for class A misdemeanor resisting law enforcement, and therefore we affirm that conviction.

[19] Affirmed in part, reversed in part, and remanded.

Baker, J., and Kirsch, J., concur.